*Exhibit 1*

# STATE OF NORTH CAROLINA

_____CLEVELAND_____ County

File No. **22 CVS 2106**

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>DEBRA RAINES | |
| Address<br>P.O. BOX 392 | **CIVIL SUMMONS** |
| City, State, Zip<br>SHELBY　　　NC　　28151 | ☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| Name Of Defendant(s)<br>MICHAEL DAVIS | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1<br>MICHAEL DAVIS<br>1656 CHERRYVILLE ROAD<br>CHERRYVILLE, NORTH CAROLINA 28021 | Name And Address Of Defendant 2 |
|---|---|

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | | |
|---|---|---|
| Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff)<br>BRENTON S. BEGLEY<br>233 EAST GRAHAM STREET<br>SHELBY, NORTH CAROLINA 28150<br>P.O. BOX 165, SHELBY　　　NC　　28151 | Date Issued<br>12/13/2022 | Time<br>8:32　☒ AM　☐ PM |
| | Signature<br> | |
| | ☒ Deputy CSC　☐ Assistant CSC　☐ Clerk Of Superior Court | |

| | | |
|---|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time<br>☐ AM　☐ PM |
| | Signature<br> | |
| | ☐ Deputy CSC　☐ Assistant CSC　☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

*1/46*

STATE OF NORTH CAROLINA
COUNTY OF CLEVELAND

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 22 CVS 2106

DEBRA RAINES,
     Petitioner,

Vs.

MICHAEL DAVIS,
     Defendant.

2022 DEC 13 A 8: 32

CLEVELAND CO., C.S.C.

BY )

)
)
)
)
)
)
)
)

COMPLAINT

     **NOW COMES,** DEBRA RAINES, Petitioner, by and through undersigned counsel, who complains, alleges, and says of the Defendant the following:

## STATEMENT OF FACTS

1.     Plaintiff is a citizen and resident of Cleveland County for at least six months prior to the filing of this action.

2.     Upon information and belief, Defendant is a citizen and resident of Cleveland County for at least six months prior to the filing of this action.

3.     On or about October 20, 2022, Plaintiff and Defendant entered into a contract (hereafter "the Contract") for the sale of property. The property described in the Contract is Cleveland County Parcel 16189, commonly known as 1656 Cherryville Road Cherryville, NC 28021 (the Contract is attached hereto as "Exhibit A"). The parcel number 16189 includes two separate tracts which were separated in a survey recorded at the Cleveland County Register of Deeds at Plat Book 46; Page 173 (the Plat Survey is attached hereto as Exhibit "B").

4.     On or about November 2, 2022, Plaintiff executed a deed (herein "the Deed") to effectuate the closing of the Property. The Deed was drafted by Brandon Jaynes with JPS Law and recorded in the Cleveland County Register of Deeds at Book 1886 and Page 634 (attached hereto as "Exhibit C").

5.     Plaintiff had the above-mentioned survey done, specifically for the purpose of selling the twelve-acre tract identified in the survey. The deed for closing was meant to reference the survey plat to identify only the twelve-acre tract as the property being conveyed.

6.     The legal description in the Deed erroneously included both tracts under Parcel 16189 (hereafter referred to as the "erroneously included property"). Plaintiff, relying on the legal experience and knowledge of Brandon Jaynes, signed the Deed without knowledge that the Deed's legal description erroneously included all the property under Parcel 16189.

7.     The mistake in the legal description of the Deed is antithetical to the intent of the parties as evidenced by the acreage amount advertised in the property listing (attached hereto as "Exhibit D"); the purchase price advertised in the listing for the twelve-acre tract matching the actual purchase price; the fact the Plaintiff acquired a survey, splitting Parcel 16189 into two tracts, specifically for the purpose of selling only a portion of the same; and email correspondence between the realtor for the property and Defendant (attached hereto as "Exhibit E"). Both parties clearly intended to respectively sell and purchase the twelve-acre tract only.

2/46

8. Upon information and belief, Defendant maintains that he is the owner of all the property related to Parcel 16189.

9. Plaintiff's primary residence is located on the portion of the property erroneously included in the Deed.

10. Upon information and belief, the Defendant intends to evict or, otherwise, seek ejectment of Plaintiff from her home.

### FIRST CAUSE OF ACTION
#### (Quiet Title)

11. Plaintiff asserts all foregoing allegations as if fully set forth herein.

12. It was not the intent of the Parties that the Deed include more property than the twelve-acre tract.

13. Defendant asserts an interest adverse to Plaintiff in the foregoing property.

14. An action to quiet title is necessary to forever solve and settle the dispute between Plaintiff and Defendant.

### SECOND CAUSE OF ACTION
#### (Reformation of Deed)

15. Plaintiff asserts all foregoing allegations as if fully set forth herein.

16. The Deed fails to embody the Plaintiff's and Defendant's actual agreement as stated in the Contract.

17. The error in the deed is a result of a mutual mistake by Plaintiff and Defendant.

18. Reformation of the Deed is necessary to give effect to the terms of the contract that the Plaintiffs and Defendants originally agreed upon.

### THIRD CAUSE OF ACTION
#### (Unjust Enrichment)

19. Plaintiff asserts all foregoing allegations as if fully set forth herein.

20. Plaintiff has enriched Defendant by conveyance of the erroneously included property.

21. Plaintiff is now lacking an ownership interest in her personal residence.

22. In absence of a remedy at law, the Defendants been unjustly enriched by an amount equal to the value of her residence and surrounding property.

### FOURTH CAUSE OF ACTION
#### (Temporary Restraining Order and Preliminary Injunction)

23. Plaintiff asserts all foregoing allegations as if fully set forth herein.

24. Upon information and belief, the Defendant intends to evict or, otherwise, seek ejectment of Plaintiff from her home.

25. Plaintiff's home is part of the property erroneously included in the deed.

26. Without the protection of this Court, the Plaintiff faces possible ejectment from her home.

27. A temporary restraining order and subsequent preliminary injunction are necessary to protect the Plaintiff and preserve the status quo pending a resolution of this litigation.

28. Based on the foregoing facts, Plaintiff has a high likelihood that she will prevail in this matter.

**WHEREFORE,** the Plaintiff Pray upon this Court to enter an ORDER as follows:

1. That the Court find that the Plaintiff is the rightful owner of the erroneously included property.

2. That the Cleveland County Register of Deeds be ordered to accept an original or certified copy of the order and to index the same showing the Plaintiff is restored of the erroneously included property.

3. That the Court, in exercising it equitable powers, reform the Deed to reflect a conveyance of only that property agreed upon by the parties.

4. That the Court, in exercising it equitable powers, find that the Defendants have been unjustly enriched in an amount equal to the value of the erroneously included property.

5. That the Court enter a temporary restraining order and subsequent preliminary injunction granting Plaintiff possession of Plaintiff's home (and surrounding ten acres, less and excepting) pending the outcome of this litigation.

6. That costs be allowed of course to Plaintiff per N.C.G.S. § 6-18.

7. For such and other and further relief this Court deems just and proper.

This the _8_ day of _December_, 2022.

MCINTYRE ELDER LAW

Brenton S. Begley
Attorney for Plaintiff
233 East Graham Street
Shelby, North Carolina 28150
NC Bar # 52023
Phone: 704.259.7040
Fax: 1.866.908.1278
Email: brenton@mcelderlaw.com

STATE OF NORTH CAROLINA
COUNTY OF CLEVELAND

DEBRA RAINES, Plaintiff, being first duly sworn, deposes and says that the allegations contained in this Complaint represents accurately her position and are true of her knowledge, except as to those matters and things alleged to be information and belief, and as to those, she believes them to be true.

_____
DEBRA RAINES, Petitioner

I, Tiffany Blackburn a Notary Public, do hereby certify that DEBRA RAINES personally appeared before me this day and I have personal knowledge of the identity of the principal and the principal acknowledged to me that she voluntarily signed the foregoing instrument for the purposes state therein and in the capacity stated.

WITNESS my hand and notarial seal, this the ___8th___ day of ___December___, 2022.

_____
Notary Public

(SEAL)

_____
Tiffany Blackburn
Printed Name

My Commission Expires: 11/25/2023

TIFFANY BLACKBURN
My Comm. Expires
NOTARY PUBLIC
11-25-2023
GASTON COUNTY, NC

5/46

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

**EXHIBIT**

**A**

## EXCLUSIVE BUYER AGENCY AGREEMENT
**[Consult "Guidelines" (Form 201G) for guidance in completing this form]**

This **EXCLUSIVE BUYER AGENCY AGREEMENT** ("Agreement") is entered into (Date) **10/18/2022**, between __Michael Davis__ as Buyer(s) ("Buyer"), and __Broad River Properties, LLC__ ("Firm") as the Buyer's exclusive agent to assist the Buyer in the acquisition of real property which may include any purchase, option and/or exchange on terms and conditions acceptable to Buyer. The individual agent who signs this Agreement on behalf of the Firm shall, on behalf of the Firm, be primarily responsible for ensuring that the Firm's duties hereunder are fulfilled; however, it is understood and agreed that other agents of the Firm may be assigned to fulfill such duties if deemed appropriate by the Firm. For purposes of this Agreement, the term "Firm," as the context may require, shall be deemed to include the individual agent who signs this Agreement and any other agents of the Firm.

> **NOTE:** If the Buyer is a corporation, limited liability company, trust or other legal entity, the entity should be named as Buyer and a duly authorized officer, manager, trustee or other legal representative of the entity should sign this Agreement on the entity's behalf.

**Buyer represents that, as of the commencement date of this Agreement, the Buyer is not a party to a buyer representation agreement with any other real estate firm. Buyer has received a copy of the "WORKING WITH REAL ESTATE AGENTS" disclosure and has reviewed it with Firm. Buyer further represents that Buyer has disclosed to Firm information about any properties of the type described in paragraph 1 below that Buyer has visited at any open houses or that Buyer has been shown by any other real estate firm.**

1. **TYPE OF PROPERTY.** ☒ Residential (improved and unimproved)  ☐ Commercial (improved and unimproved)  ☐ Other
   (a) General Location: __1656 Cherryville Road, Cherryville, NC 28021__
   (b) Other: _____

2. **EFFECT OF AGREEMENT.** Buyer intends to acquire real property of the type described in paragraph 1. *By employing Firm as Buyer's exclusive agent, Buyer agrees to conduct all negotiations for such property through Firm, and to refer to Firm all inquiries received in any form from other real estate firms, prospective sellers or any other source, during the time this Agreement is in effect.*

3. **TERM OF AGREEMENT.** The term of this Agreement ("Term") shall begin on __10/18/2022__ and shall terminate as follows (*check appropriate box*):
   ☒ *(For buyers who intend to purchase a single property):* This Agreement shall terminate when Buyer acquires real property of the type described in paragraph 1, or 11:59 p.m. on **November 2nd, 2022**, whichever occurs sooner.
   ☐ *(For buyers who may purchase more than one property):* This Agreement shall terminate at 11:59pm on _____.

4. **COMPENSATION OF FIRM.**
   (a) Firm acknowledges receipt of a non-refundable retainer fee in the amount of $ __0.00__ which ☐ shall ☐ shall not be credited toward any compensation due Firm under this Agreement.
   (b) Buyer agrees that Firm's fee for services hereunder shall be in the amount of __0.00__ ("Fee")
   *(Insert dollar amount, percentage of purchase price, or other method of determining Firm's compensation for each type of property the Buyer may purchase, such as resale, new construction, land/lot and/or unrepresented seller. Do not insert N/A or a zero ($0)).*
   (i) Firm shall seek the Fee from a cooperating listing firm (through the listing firm's offer of compensation in MLS or otherwise) or from the seller if there is no listing firm, and Buyer agrees that Firm shall be entitled to receive same in consideration for Firm's services hereunder.
   (ii) If Buyer purchases property where the compensation offered by the listing firm and/or seller is less than the Fee, or where no compensation is offered by either the listing firm or the seller, Buyer and Firm agree that Buyer will pay the difference between the Fee and the compensation offered unless prohibited by law. Firm will timely inform Buyer if the compensation offered is less than expected.
   (iii) If additional compensation, incentive, bonus, rebate and/or other valuable consideration (*"Additional Compensation"*) is offered through the MLS or otherwise, Buyer will permit the Firm to receive it in addition to the Fee. Firm shall timely disclose the promise or expectation of receiving any such Additional Compensation and confirm the disclosure in writing



North Carolina Association of REALTORS®, Inc.

Buyer initials __MD__   Individual agent initials __/6/46__



**STANDARD FORM 201**
Revised 7/2022
© 7/2022

Case 1:23-cv-00906-MSC-WCM   Document 1-1   Filed 12/04/23   Page 6 of 46

DocuSign Envelope ID: 247E02B2-62B9-45B4-9A68-49BF8FEED0F4

before Buyer makes or accepts an offer to buy. (Note: NCAR Form #770 may be used to confirm the disclosure of any such Additional Compensation)

(c) The compensation shall be deemed earned under any of the following circumstances:

   (i) If, during the term of this Agreement, Buyer, any assignee of Buyer or any person/legal entity acting on behalf of Buyer directly or indirectly enters into an agreement to purchase, option, and/or exchange any property of the type described above regardless of the manner in which Buyer was introduced to the property; or

   (ii) If, within _____ days after expiration of this Agreement ("Protection Period"), Buyer enters into a contract to acquire property introduced to Buyer during the term of this Agreement by Firm or any third party, unless Buyer has entered into a valid buyer agency agreement with another real estate firm; or

   (iii) If, having entered into an enforceable contract to acquire property during the term of this Agreement, Buyer defaults under the terms of that contract.

(d) The compensation will be due and payable at distribution of proceeds from sale of the Property by the closing attorney or upon Buyer's default of any purchase agreement. If Buyer defaults, the total compensation that would have been due the Firm will be due and payable immediately in cash from the Buyer. No assignment of rights in real property obtained for Buyer or any assignee of Buyer or any person/legal entity acting on behalf of Buyer pursuant to this Agreement shall operate to defeat any of Firm rights under this Agreement.

> **NOTE:** Buyer understands and acknowledges that there is the potential for a conflict of interest generated by a percentage of price based fee for representing Buyer. The amount, format or rate of real estate commission is not fixed by law, but is set by each broker individually, and may be negotiable between Buyer and Firm.

(e) If Buyer purchases unimproved property, Agent may assist Buyer in identifying a contractor to make improvements on the property, subject to the provisions of paragraph 10. Buyer acknowledges and understands that in such a case, the contractor may offer to compensate Agent. Agent shall disclose to Buyer the existence of such an offer of compensation before Buyer enters into a contract with the contractor, and Buyer hereby consents to the receipt by Agent of any such compensation.

**5. OTHER POTENTIAL BUYERS.** Buyer understands that other prospective purchasers represented by Firm may seek property, submit offers, and contract to purchase property through Firm, including the same or similar property as Buyer seeks to purchase. Buyer acknowledges, understands and consents to such representation of other prospective purchasers by Firm through its agents.

**6. FIRM'S DUTIES.**

(a) **General.** During the term of this Agreement, Firm shall promote the interests of Buyer by:

   (i) performing the terms of this Agreement;

   (ii) seeking property at a price and terms acceptable to Buyer;

   (iii) presenting in a timely manner all written offers or counteroffers to and from Buyer;

   (iv) disclosing to Buyer all material facts related to the property or concerning the transaction of which Firm has actual knowledge; and

   (v) accounting for in a timely manner all money and property received in which Buyer has or may have an interest.

(b) **Confidentiality.** Unless otherwise provided by law or Buyer consents in writing to the release of the information, Firm shall maintain the confidentiality of all personal and financial information and other matters identified as confidential by Buyer, if that information is received from Buyer during the brokerage relationship.

(c) **Standard of care.** In satisfying Firm's duties, Firm shall exercise ordinary care, comply with all applicable laws and regulations, and treat all prospective sellers honestly and not knowingly give them false information.

(d) **Representation of others.** Firm may show the same property to other buyers, represent other buyers, represent sellers relative to other properties, or provide assistance to a seller or prospective seller by performing ministerial acts that are not inconsistent with Firm's duties under this Agreement.

(e) **Submission of information to listing service.** Upon closing of any sale of property not entered in a listing service of which Firm is a member, Buyer authorizes Firm to submit pertinent information concerning the property, including sales price, to such listing service.

**7. DISCLOSURE OF BUYER'S NAME/MAILING ADDRESS.**

(a) Unless otherwise stated in Paragraph 13 below, Firm has Buyer's permission to disclose Buyer's name.

(b) In accordance with NC General Statutes Section 93A-12, if a dispute regarding the return or forfeiture of any earnest money deposit arises between Buyer and the seller of any real property Buyer may agree to purchase, the escrow agent holding the deposit may deposit the disputed monies with the appropriate Clerk of Court following written notice to the parties. In the event of any such dispute, Buyer directs Firm to disclose Buyer's last known mailing address to the escrow agent upon request to enable the escrow agent to comply with the notice requirement of such law.

Page 2 of 7

Buyer initials _____ [MD]   Individual agent initials _____

STANDARD FORM 201
Revised 7/2022
© 7/2022

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

**8. THE AGENT (FIRM) SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY.**

> **WARNING: Buyer Letters to Seller.** Personal letters to sellers expressing why a buyer wishes to purchase a seller's property is a tactic sometimes used to attempt to make a buyer's offer stand out to the seller. Such letters often contain personal information and reveal characteristics of the buyer which could be used, knowingly or through unconscious bias, as a basis for the seller's decision to accept or reject an offer that may violate State and Federal Fair Housing laws. In order to avoid potential liability for unlawful discrimination as well as the appearance of impropriety, Buyer should discuss with Firm how any such letters will be handled.

**9. BUYER'S DUTIES.** Buyer agrees to cooperate with Firm in the acquisition of real property of the type described in paragraph 1, including but not limited to:
    (a) working exclusively with Firm during the term of this Agreement;
    (b) immediately referring to Firm information about any properties Buyer may have an interest in examining;
    (c) complying with the reasonable requests of Firm to supply any pertinent financial or personal data needed to fulfill the terms of this Agreement;
    (d) being available for reasonable periods of time to examine properties;
    (e) examining properties only by appointments made by or through Firm and accompanied by an agent of Firm;
    (f) conducting all negotiations and communications through Firm;
    (g) conducting all due diligence on property in consultation with Firm; and
    (h) paying for all products and/or services required in the examination and evaluation of properties (examples: surveys, water/soil tests, title reports, property inspections, etc.).

**10. OTHER PROFESSIONAL ADVICE.** In addition to the services rendered to Buyer by the Firm under the terms of this Agreement, Buyer is advised to seek other professional advice in matters of law, taxation, financing, insurance, surveying, wood-destroying insect infestation, structural soundness, engineering, building construction, and other matters pertaining to any proposed transaction. Although Firm may provide Buyer the names of providers who claim to perform such services, Buyer understands that Firm cannot guarantee the quality of service or level of expertise of any such provider. Buyer agrees to pay the full amount due for all services directly to the service provider whether or not the transaction closes. Buyer also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur either as a result of Buyer's selection and use of any such provider or Buyer's election not to have one or more of such services performed.

☒ Buyer acknowledges receipt of a sample copy of an Offer to Purchase And Contract for review purposes.
☒ Buyer acknowledges receipt of a sample copy of a Professional Services Disclosure and Election form (form #760) for review purposes.

**11. HOME WARRANTY.** The seller of any property Buyer may be interested in buying may or may not provide a home warranty as a part of any sale. If the seller does not provide a home warranty, Buyer may elect to purchase one. Buyer understands that although Firm will assist Buyer in identifying available home warranty products, Buyer must refer specific questions regarding coverage afforded by any such product to the provider thereof. If Firm assists Buyer in obtaining a home warranty, a fee of _____ will be offered to Firm by the person or entity through or from which any home warranty is obtained as compensation to Firm for its assistance in obtaining the home warranty, and Buyer hereby consents to Firm's receipt of such fee.

**12. CONFIDENTIALITY OF OFFERS.** Real estate brokers are prohibited by N.C. Real Estate Commission rule from disclosing the price or other material terms contained in a party's offer to purchase, sell, lease, rent or option real property to a competing party without the express authority of the party making the offer. However, sellers may elect not to treat the existence, terms, or conditions of any offers Buyer may make as confidential. Additionally, sellers may elect not to disclose or authorize seller's agent to disclose the existence of any other offer(s).

**13. ADDITIONAL PROVISIONS.** _____
_____

Buyer initials [MD]    Individual agent initials [MW] 8/46

**STANDARD FORM 201**
**Revised 7/2022**
**© 7/2022**

Case 1:22-cv-00828-TDS-JEP   Document 121   Filed 12/01/23   Page 8 of 46

**14. DUAL AGENCY.** Buyer understands that the potential for dual agency will arise if Buyer becomes interested in viewing property listed with Firm. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

(a) **Disclosure of Information.** In the event Firm serves as a dual agent, Buyer agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:

(1) that a party may agree to a price, terms, or any conditions of sale other than those offered;

(2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and

(3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.

(b) **Firm's Role as Dual Agent.** If Firm serves as agent for both Buyer and a seller in a transaction, Firm shall make every reasonable effort to represent Buyer and seller in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Buyer and seller. Buyer understands and acknowledges that:

(1) Prior to the time dual agency occurs, Firm will act as Buyer's exclusive agent;

(2) In its separate representation of Buyer and seller, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;

(3) Firm is required by law to disclose to Buyer and seller any known or reasonably ascertainable material facts.

Buyer agrees Firm shall not be liable to Buyer for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c) **Buyer's Role.** Should Firm become a dual agent, Buyer understands and acknowledges that:

(1) Buyer has the responsibility of making Buyer's own decisions as to what terms are to be included in any purchase and sale agreement with a seller client of Firm;

(2) Buyer is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Buyer and seller and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;

(3) Buyer has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;

(4) Buyer may seek independent legal counsel to assist Buyer with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Firm become a dual agent, Buyer waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Firm's role as a dual agent. Buyer shall have a duty to protect Buyer's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Buyer wants included in said agreement.

(d) **Designated Dual Agency.** When a real estate firm represents both the buyer and seller in the same real estate transaction, the firm may, in its discretion, offer designated dual agency. If offered, designated dual agency permits the firm, with the prior express approval of both the buyer and seller, to designate one or more agents to represent only the interests of the seller and a different agent(s) to represent only the interests of the buyer, unless prohibited by law.

---

**NOTE:** An individual agent may not be designated to represent a party in a transaction if that agent has received confidential information concerning the other party in connection with the transaction.

---

[THIS SPACE INTENTIONALLY LEFT BLANK]

Buyer initials _____    Individual agent initials _____   9/46

STANDARD FORM 201
Revised 7/2022
© 7/2022

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

**(e) Authorization/Direction** *(initial either Dual Agency or Exclusive Representation).*

___[MD]___ _____ **Dual Agency.** Buyer authorizes the Firm to act as a dual agent, representing both the Buyer and the seller, subject to the terms and conditions set forth in Paragraph 14.

Buyer ☒ DOES ☐ DOES NOT authorize the same individual agent to represent both the Buyer and the seller in a transaction.

_____ _____ (also *initial if Firm offers designated dual agency and Buyer authorizes designated dual agency*) **Designated Dual Agency.** In addition to authorizing Firm to act as a dual agent, Buyer authorizes and directs Firm to designate an individual agent(s) to represent the Buyer and a different individual agent(s) to represent the seller. Firm will practice designated dual agency unless: (i) designated agency would not be permitted by law due to circumstances existing at the time of the transaction, or (ii) Buyer authorizes Firm in writing to remain in dual agency only.

OR

_____ _____ **Exclusive Representation.** Buyer desires exclusive representation at all times during this agreement and does NOT authorize dual agency.

**(f) Dual Agency Compensation.** If the Firm acts as a dual agent (including designated agency), the total fee the Firm expects to receive for its services in representing Buyer and the seller shall be ___8%___ _____

*(Insert dollar amount, percentage of purchase price, or other method of determining Firm's compensation for each type of property such as resale, new construction and/or land/lot the Buyer may purchase.).* THIS WILL IN NO WAY AFFECT OR MODIFY THE AMOUNT OF THE FEE SET FORTH IN PARAGRAPH 4 ABOVE THAT FIRM EXPECTS TO RECEIVE FOR ITS SERVICES IN REPRESENTING BUYER UNDER THIS AGREEMENT. In the event Buyer is interested in purchasing a property where the Firm's total fee is different from that described in this subparagraph (f), the Firm shall timely disclose the fee to Buyer and confirm it in writing before Buyer makes or accepts an offer to buy or sell any such property.

## 15. TERMINATION/BREACH/MEDIATION/ATTORNEYS' FEES.

**(a) Termination.** Buyer acknowledges and understands that this Agreement constitutes a binding, exclusive contract between Buyer and Firm for the entire Term stated above. Buyer's withdrawal from the fiduciary relationship existing between Buyer and Firm prior to the Expiration Date of this Agreement, or Buyer's execution of a buyer agency agreement with another firm that becomes effective during the Term of this Agreement, would be a material breach of this Agreement unless it has been terminated in writing by mutual consent of Buyer and Firm or for legally-sufficient cause, and any subsequent purchase of real property of the type described in paragraph 1 during the Term may entitle Firm to the Fee described in paragraph 4(b).

**(b) Breach.** If Buyer is in material breach of this Agreement, Firm will be entitled to pursue all remedies available to Firm for such breach, including but not limited to recovery of the Fee described in paragraph 4(b). This provision is in addition to Firm's right to the Fee if Buyer breaches an enforceable contract to acquire property after the Fee has been earned in accordance with paragraph 4(c). If Firm is in material breach of this Agreement, Buyer will be entitled to pursue all remedies available to Buyer for such breach.

**(c) Mediation.** If a dispute arises out of or related to this Agreement or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If the need for mediation arises, the parties will choose a mutually acceptable mediator and will share the cost of mediation equally.

**(d) Attorneys' Fees.** If legal proceedings are brought by Firm or Buyer against the other, the parties agree that a party shall be entitled to recover reasonable attorneys' fees to the extent permitted under N.C. Gen. Stat. § 6-21.2.

## 16. ENTIRE AGREEMENT/CHANGES.

This Agreement constitutes the entire agreement between Buyer and Firm relating to the subject thereof, and any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. This Agreement may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument. No modification of any of the terms of this Agreement shall be valid, binding upon the parties, or entitled to enforcement unless such modification has first been reduced to writing and signed by both Buyer and Firm.

> **NOTE:** Buyer should consult with Firm before visiting any resale or new homes or contacting any other real estate firm representing sellers, to avoid the possibility of confusion over the brokerage relationship and misunderstandings about liability for compensation.

Buyer initials ___[MD]___    Individual agent initials ___[AW]___ 10/46

**STANDARD FORM 201**
Revised 7/2022
© 7/2022

Case 1:22-cv-00280-MOC-WCM Document 1-1 Filed 12/21/22 Page 10 of 46

DocuSign Envelope ID: 247E92B2-82B9-45B4-9A66-1BBE8EEEEDDF4

17. **SURVEILLANCE:** Buyer is advised to be mindful of the fact that there could be video/audio/surveillance device(s) located on any property examined by Buyer and that Buyer or Buyer's representatives may be under surveillance during any such examination. Federal and State laws prohibit the interception of an oral communication through the use of any electronic, mechanical, or other device, whether or not recorded, without the consent of a party to that communication. However, video surveillance without consent is not illegal.

18 **PHOTOGRAPHS AND VIDEO:** Unless a property owner has notified the public that photography and video recording is prohibited, it is permissible to photograph or video the interior of private property since the owner's permission to enter the property implies permission to do so. However, under no circumstances may Buyer take photographs or videos that intrude on a property owner's reasonable expectations of privacy.

Buyer should only photograph or video things that are in "plain view". For example, taking a photo or video of the contents of a medicine cabinet or of financial records in a desk drawer would be impermissible. In addition, any permitted photography or video should be used only in a manner related directly to Buyer's examination and purchase of a property. TAKING IMPERMISSIBLE PHOTOGRAPHS OR VIDEOS OR USING THEM FOR AN IMPERMISSIBLE PURPOSE COULD SUBJECT BUYER TO CIVIL LIABILITY.

Buyer acknowledges and understands that neither Firm nor its agents have control over information about any property Buyer may purchase that has been placed on the Internet in connection with the marketing of any such property for sale, whether by or through a listing service or otherwise, including but not limited to photographs, and that any such information will not be removed following Buyer's purchase of any such property.

19. **WIRE FRAUD WARNING:**

BEFORE SENDING ANY WIRE, BUYER SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO VERIFY THE INSTRUCTIONS. IF BUYER RECEIVES WIRING INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH LOCATION, ACCOUNT NAME OR ACCOUNT NUMBER, THEY SHOULD BE PRESUMED FRAUDULENT. DO NOT SEND ANY FUNDS AND CONTACT THE CLOSING ATTORNEY'S OFFICE IMMEDIATELY.

BUYER SHOULD CALL THE CLOSING ATTORNEY'S OFFICE AT A NUMBER THAT IS INDEPENDENTLY OBTAINED. TO ENSURE THAT THE CONTACT IS LEGITIMATE, BUYER SHOULD NOT RELY ON A PHONE NUMBER IN AN EMAIL FROM THE CLOSING ATTORNEY'S OFFICE, BUYER'S REAL ESTATE AGENT OR ANYONE ELSE.

Buyer acknowledges and understands that there are risks associated with wire transfers that are not within the reasonable control of Firm, and Buyer hereby agrees to release and discharge Firm and Firm's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by gross negligence of Firm or Firm's agents arising directly or indirectly out of any wire transfer Buyer sends or receives/was to receive in connection with any real estate transaction in which Firm represents buyer.

[THIS SPACE INTENTIONALLY LEFT BLANK]

Page 6 of 7

Buyer initials ___MD___ Individual agent initials ___ ___

STANDARD FORM 201
Revised 7/2022
© 7/2022

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A88-49BF8FEED0F4

**NOTE:** The North Carolina Real Estate Commission publishes a series of Q&A brochures that address common questions on a variety of topics relating to real estate transactions, including offer and acceptance, earnest money deposits, home inspections, and real estate closings . They are available free of charge on the Commission's website at www.ncrec.gov.

**Buyer and Firm each hereby acknowledge receipt of a signed copy of this Agreement.**

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Buyer:   Michael Davis                    _Mr. Michael Davis_         10/19/2022
                Print Name                        Signature                      Date

Contact Information:   206-299-2120x1679
                Home              Work              Cell              Email
Mailing Address:   Electronic Mail: michaeldavis@theunixplace.com

Buyer: _____
                Print Name                        Signature                      Date

Contact Information: _____
                Home              Work              Cell              Email

Mailing Address: _____

Entity Buyer: _____
                (Name of LLC/Corporation/Partnership/Trust/etc.)

By: _____               Date: _____

Name: _____            Title: _____

Contact Information: _____
                Home              Work              Cell              Email

Mailing Address: _____

Firm:   **Broad River Properties, LLC**      **C36706**        Firm Phone: **704-284-3333**
                Print Real Estate Firm Name         Firm License Number

Office Address:   **211 S Washington Street, Shelby NC 28150**

By:   _Niki Wood_                        **329906**              10/19/22
                Individual Agent Signature            Individual License Number        Date

Agent Phone: **704-284-3333**   Fax: _____   Email: **nwood@broadriverproperties.com**

12/46

STANDARD FORM 201
Revised 7/2022
© 7/2022

#Sign Envelope ID: 247E92B2-62B9-46B4-0A88-49BFBEEED0F4

## OFFER TO PURCHASE AND CONTRACT
[Consult "Guidelines" (Form 2G) for guidance in completing this form]

For valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Buyer offers to purchase and Seller upon acceptance agrees to sell and convey the Property on the terms and conditions of this Offer To Purchase and Contract and any addendum or modification made in accordance with its terms (together the "Contract").

**1. TERMS AND DEFINITIONS:** The terms listed below shall have the respective meaning given them as set forth adjacent to each term.

(a) "Seller": **Debra Raines**

(b) "Buyer": **Michael Davis**

(c) "Property": The Property shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 2 and 3 below.

The Property ☐ will ☒ will not include a manufactured (mobile) home(s). (If a manufactured home(s) is included, Buyer and Seller should include the Manufactured (Mobile) Home provision in the Additional Provisions Addendum (Standard Form 2A11-T) with this offer.)

Street Address: **1656 Cherryville Road**
City: **Cherryville**                                           Zip: **28021**
County: **Cleveland**                        , North Carolina

NOTE: Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown.

Legal Description: (Complete *ALL* applicable)
Plat Reference: Lot/Unit _____ , Block/Section _____ , Subdivision/Condominium _____
_____ , as shown on Plat Book/Slide _____ at Page(s) _____
The PIN/PID or other identification number of the Property is: _____
Other description: **Parcel ID 16189**
Some or all of the Property may be described in Deed Book **1789** at Page **1847**

(d) "Purchase Price":

| | |
|---|---|
| $ **175,000** | paid in U.S. Dollars upon the following terms: |
| $ **1,000** | BY DUE DILIGENCE FEE made payable and delivered to Seller by the Effective Date by ☐ cash ☐ personal check ☐ official bank check ☐ wire transfer ☐ electronic transfer (*specify payment service:* _____ ) |
| $ **1,000** | BY INITIAL EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by ☐ cash ☐ personal check ☐ official bank check ☒ wire transfer, ☐ electronic transfer within five (5) days of the Effective Date of this Contract. |
| $ _____ | BY (ADDITIONAL) EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) no later than 5 p.m. on _____ , *TIME BEING OF THE ESSENCE* by ☐ cash ☐ official bank check ☐ wire transfer ☐ electronic transfer |
| $ _____ | BY ASSUMPTION of the unpaid principal balance and all obligations of Seller on the existing loan(s) secured by a deed of trust on the Property in accordance with the attached Loan Assumption Addendum (Standard Form 2A6-T). |
| $ _____ | BY SELLER FINANCING in accordance with the attached Seller Financing Addendum (Standard Form 2A5-T). |
| $ _____ | BY BUILDING DEPOSIT in accordance with the attached New Construction Addendum (Standard Form 2A3-T). |
| $ **173,000** | BALANCE of the Purchase Price in cash at Settlement (some or all of which may be paid with the proceeds of a new loan) |

Page 1 of 16



This form jointly approved by:
North Carolina Bar Association's Real Property Section
North Carolina Association of REALTORS®, Inc.

Buyer's initials _MD_     Seller's initials _DR_



STANDARD FORM 2-T
Revised 7/2022
© 7/2022

13/46

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

> **NOTE:** If the parties agree that Buyer will pay any fee or deposit described above by electronic or wire transfer, Seller agrees to cooperate in effecting such transfer, including the establishment of any necessary account and providing any necessary information to Buyer, provided, however, Buyer shall be responsible for additional costs, if any, associated with such transfer.

Should Buyer fail to deliver either the Due Diligence Fee or any Initial Earnest Money Deposit by their due dates, or should any check or other funds paid by Buyer be dishonored, for any reason, by the institution upon which the payment is drawn, Buyer shall have one (1) banking day after written notice to deliver cash, official bank check, wire transfer or electronic transfer to the payee. In the event Buyer does not timely deliver the required funds, Seller shall have the right to terminate this Contract upon written notice to Buyer, and Seller shall be entitled to recover the Due Diligence Fee together with all Earnest Money Deposit paid or to be paid in the future. In addition, Seller may be entitled to recover reasonable attorney fees and court costs. See paragraph 23 for a party's right to attorneys' fees incurred in collecting the Earnest Money Deposit or Due Diligence Fee.

(e) **"Earnest Money Deposit":** The Initial Earnest Money Deposit, the Additional Earnest Money Deposit and any other earnest monies paid or required to be paid in connection with this transaction, collectively the "Earnest Money Deposit", shall be deposited promptly and held in escrow by Escrow Agent until Closing, at which time it will be credited to Buyer, or until this Contract is otherwise terminated. In the event: (1) this offer is not accepted; or (2) a condition of any resulting contract is not satisfied, then the Earnest Money Deposit shall be refunded to Buyer. See paragraph 23 for remedies in the event of breach of this Contract.

(f) **"Escrow Agent"** (insert name):     JPS Law
Buyer and Seller consent to disclosure by the Escrow Agent of any material facts pertaining to the Earnest Money Deposit to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

> **NOTE:** In the event of a dispute between Seller and Buyer over the disposition of the Earnest Money Deposit held in escrow, a licensed real estate broker ("Broker") is required by state law (and Escrow Agent, if not a Broker, hereby agrees) to retain the Earnest Money Deposit in the Escrow Agent's trust or escrow account until Escrow Agent has obtained a written release from the parties consenting to its disposition or until disbursement is ordered by a court of competent jurisdiction. Alternatively, if a Broker or an attorney licensed to practice law in North Carolina ("Attorney") is holding the Earnest Money Deposit, the Broker or Attorney may deposit the disputed monies with the appropriate clerk of court in accordance with the provisions of N.C.G.S. §93A-12.

THE PARTIES AGREE THAT A REAL ESTATE BROKERAGE FIRM ACTING AS ESCROW AGENT MAY PLACE THE EARNEST MONEY DEPOSIT IN AN INTEREST BEARING TRUST ACCOUNT AND THAT ANY INTEREST EARNED THEREON SHALL BE DISBURSED TO THE ESCROW AGENT MONTHLY IN CONSIDERATION OF THE EXPENSES INCURRED BY MAINTAINING SUCH ACCOUNT AND RECORDS ASSOCIATED THEREWITH.

(g) **"Effective Date":** The date that: (1) the last one of Buyer and Seller has signed or initialed this offer or the final counteroffer, if any, and (2) such signing or initialing is communicated to the party making the offer or counteroffer, as the case may be. The parties acknowledge and agree that the initials lines at the bottom of each page of this Contract are merely evidence of their having reviewed the terms of each page, and that the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement.

(h) **"Due Diligence":** Buyer's opportunity to investigate the Property and the transaction contemplated by this Contract, including but not necessarily limited to the matters described in Paragraph 4 below, to decide whether Buyer, in Buyer's sole discretion, will proceed with or terminate the transaction.

(i) **"Due Diligence Fee":** A negotiated amount, if any, paid by Buyer to Seller with this Contract for Buyer's right to terminate the Contract for any reason or no reason during the Due Diligence Period. It shall be the property of Seller upon the Effective Date and shall be a credit to Buyer at Closing. The Due Diligence Fee shall be non-refundable except in the event of a material breach of this Contract by Seller, or if this Contract is terminated under Paragraph 23(b) or as otherwise provided in any addendum hereto. Buyer and Seller each expressly waive any right that they may have to deny the right to conduct Due Diligence or to assert any defense as to the enforceability of this Contract based on the absence or alleged insufficiency of any Due Diligence Fee, it being the intent of the parties to create a legally binding contract for the purchase and sale of the Property without regard to the existence or amount of any Due Diligence Fee. See paragraph 23 for a party's right to attorneys' fees incurred in collecting the Due Diligence Fee.

(j) **"Due Diligence Period":** The period beginning on the Effective Date and extending through 5:00 p.m. on    Friday,
October 28th, 2022                                                    **TIME BEING OF THE ESSENCE.**

Buyer's initials ___ [MD]     Seller's initials  DP ___          1⁴/₄⁶

STANDARD FORM 2-T
Revised 7/2022
© 7/2022

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8EFEEDDF4

(k) **"Settlement"**: The proper execution and delivery to the closing attorney of all documents necessary to complete the transaction contemplated by this Contract, including the deed, settlement statement, deed of trust and other loan or conveyance documents, and the closing attorney's receipt of all funds necessary to complete such transaction.

(l) **"Settlement Date"**: The parties agree that Settlement will take place on <u>Tuesday, November 2nd, 2022</u> (the "Settlement Date"), unless otherwise agreed in writing, at a time and place designated by Buyer.

> **NOTE:** See paragraph 12, **DELAY IN SETTLEMENT/CLOSING** for conditions under which Settlement may be delayed.

(m) **"Closing"**: The completion of the legal process which results in the transfer of title to the Property from Seller to Buyer, which includes the following steps: (1) the Settlement (defined above); (2) the completion of a satisfactory title update to the Property following the Settlement; (3) the closing attorney's receipt of authorization to disburse all necessary funds; and (4) recordation in the appropriate county registry of the deed(s) and deed(s) of trust, if any, which shall take place as soon as reasonably possible for the closing attorney after Settlement. Upon Closing, the proceeds of sale shall be disbursed by the closing attorney in accordance with the settlement statement and the provisions of Chapter 45A of the North Carolina General Statutes. If the title update should reveal unexpected liens, encumbrances or other title defects, or if the closing attorney is not authorized to disburse all necessary funds, then the Closing shall be suspended and the Settlement deemed delayed under Paragraph 12 (Delay in Settlement/Closing).

> **WARNING:** The North Carolina State Bar has determined that the performance of most acts and services required for a closing constitutes the practice of law and must be performed only by an attorney licensed to practice law in North Carolina. State law prohibits unlicensed individuals or firms from rendering legal services or advice. Although non-attorney settlement agents may perform limited services in connection with a closing, they may not perform all the acts and services required to complete a closing. A closing involves significant legal issues that should be handled by an attorney. Accordingly, it is the position of the North Carolina Bar Association and the North Carolina Association of REALTORS® that all buyers should hire an attorney licensed in North Carolina to perform a closing.

(n) **"Special Assessments"**: A charge against the Property by a governmental authority in addition to ad valorem taxes and recurring governmental service fees levied with such taxes, or by an owners' association in addition to any regular assessment (dues), either of which may be a lien against the Property.

> **NOTE:** Buyer's and Seller's respective responsibilities for the payment of Special Assessments are addressed in paragraphs 6(a) and 8(k).

## 2. FIXTURES AND EXCLUSIONS:

> **WARNING: THE PARTIES SHOULD NOT ASSUME THAT AN ITEM WILL OR WILL NOT BE INCLUDED IN THE SALE BASED ON AN ORAL OR WRITTEN STATEMENT OR UNDERSTANDING THAT IS NOT A PART OF THIS CONTRACT. BUYER AND SELLER SHOULD BE SPECIFIC WHEN NEGOTIATING WHAT ITEMS WILL BE INCLUDED OR EXCLUDED FROM THE SALE.**

(a) **Fixtures Are Included in Purchase Price:** ALL EXISTING FIXTURES ARE INCLUDED IN THE SALE AS PART OF THE PURCHASE PRICE, FREE OF LIENS, UNLESS EXCLUDED IN SUBPARAGRAPHS (d) OR (e).

[THIS SPACE INTENTIONALLY LEFT BLANK]

Buyer's initials: _MD_   Seller's initials _DR_

15/46

STANDARD FORM 2-T
Revised 7/2022
© 7/2022

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

**(b) Specified Items:** Buyer and Seller agree that the following items, if present on the Property on the date of the offer, shall be included in the sale as part of the Purchase Price free of liens, unless excluded in subparagraphs (d) or (e) below. ALL ITEMS LISTED BELOW INCLUDE BOTH TRADITIONAL AND "SMART" VERSIONS AND ANY EXCLUSIVELY DEDICATED, RELATED EQUIPMENT AND/OR REMOTE CONTROL DEVICES.

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Garage door openers
- Generators that are permanently wired
- Invisible fencing with power supply
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems; rain barrels; landscape water features; address markers

- Mailboxes; mounted package and newspaper receptacles
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pools; spas; hot tubs (excluding inflatable pools, spas, and hot tubs)
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Thermostats
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain/drapery rods and brackets, door and window screens and combination doors, awnings and storm windows

**(c) Unpairing/deleting data from devices:** Prior to Closing, Seller shall "unpair" any devices that will convey from any personal property devices (hubs, intelligent virtual assistants, mobile devices, vehicles, etc.) with which they are paired, delete personal data from any devices that will convey, and restore all devices to factory default settings unless otherwise agreed. Seller's obligations under this paragraph 2(c) shall survive Closing.

> NOTE: ANY FIXTURE OR OTHER ITEM DESCRIBED IN SUBPARAGRAPHS (a) AND (b) THAT WILL NOT BE A PART OF THE SALE SHOULD BE IDENTIFIED IN SUBPARAGRAPHS (d) OR (e), AS APPLICABLE.

**(d) Items Leased or Not Owned:** Any item which is leased or not owned by Seller, such as antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:

_____

_____

In addition, any leased fuel tank identified in paragraph 7(d) shall not convey.

**(e) Other Items That Do Not Convey:** The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (b)*): _____

_____

_____

_____

Seller shall repair any damage caused by removal of any items excluded above.

Buyer's initials MD    Seller's initials DR    16/46

STANDARD FORM 2-T
Revised 7/2022
© 7/2022

Case 1:22-cr-00360-MOC-WCM Document 111 Filed 12/21/23 Page 16 of 46

...personal property present on the Property on the date of the offer shall be transferred to ~~~~
Buyer at closing at no value: _____

_____

_____

_____

> **NOTE: ANY PERSONAL PROPERTY THAT WILL BE A PART OF THE SALE SHOULD BE IDENTIFIED IN THIS PARAGRAPH.** Buyer is advised to consult with Buyer's lender to assure that the Personal Property items listed above can be included in this Contract.

## 4. BUYER'S DUE DILIGENCE PROCESS:

> **WARNING: BUYER IS STRONGLY ENCOURAGED TO CONDUCT DUE DILIGENCE DURING THE DUE DILIGENCE PERIOD.** If Buyer is not satisfied with the results or progress of Buyer's Due Diligence, Buyer should terminate this Contract, PRIOR TO THE EXPIRATION OF THE DUE DILIGENCE PERIOD, unless Buyer can obtain a written extension from Seller. SELLER IS NOT OBLIGATED TO GRANT AN EXTENSION. Although Buyer may continue to investigate the Property following the expiration of the Due Diligence Period, Buyer's failure to deliver a Termination Notice to Seller prior to the expiration of the Due Diligence Period will constitute a waiver by Buyer of any right to terminate this Contract based on any matter relating to Buyer's Due Diligence. Provided however, following the Due Diligence Period, Buyer may still exercise a right to terminate if Seller fails to materially comply with any of Seller's obligations under Paragraph 8 of this Contract or for any other reason permitted under the terms of this Contract or North Carolina law.

(a) **Loan:** Buyer, at Buyer's expense, shall be entitled to pursue qualification for and approval of the Loan if any.

> **NOTE:** There is no loan or appraisal contingency in this Offer To Purchase and Contract. Therefore, Buyer is advised to consult with Buyer's lender prior to signing this offer to assure that the Due Diligence Period allows sufficient time for the loan process and for Buyer's lender to provide Buyer sufficient information to decide whether to proceed with or terminate the transaction.

(b) **Property Investigation:** Buyer or Buyer's agents or representatives, at Buyer's expense, shall be entitled to conduct all desired tests, surveys, appraisals, investigations, examinations and inspections of the Property as Buyer deems appropriate, including but NOT limited to the following:

    (i) **Inspections:** Inspections to determine the condition of any improvements on the Property, the presence of unusual drainage conditions or evidence of excessive moisture adversely affecting any improvements on the Property, the presence of asbestos or existing environmental contamination, evidence of wood-destroying insects or damage therefrom, and the presence and level of radon gas on the Property.

    (ii) **Review of Documents:** Review of the Declaration of Restrictive Covenants, Bylaws, Articles of Incorporation, Rules and Regulations, and other governing documents of any applicable owners' association and/or subdivision. If the Property is subject to regulation by an owners' association, it is recommended that Buyer review the completed Residential Property and Owners' Association Disclosure Statement provided by Seller prior to signing this offer. It is also recommended that the Buyer determine if the owners' association or its management company charges fees for providing information required by Buyer's lender or confirming restrictive covenant compliance.

    (iii) **Insurance:** Investigation of the availability and cost of insurance for the Property.

    (iv) **Appraisals:** An appraisal of the Property.

    (v) **Survey:** A survey to determine whether the property is suitable for Buyer's intended use and the location of easements, setbacks, property boundaries and other issues which may or may not constitute title defects.

    (vi) **Zoning and Governmental Regulation:** Investigation of current or proposed zoning or other governmental regulation that may affect Buyer's intended use of the Property, adjacent land uses, planned or proposed road construction, and school attendance zones.

    (vii) **Flood Hazard:** Investigation of potential flood hazards on the Property, and/or any requirement to purchase flood insurance in order to obtain the Loan

    (viii) **Utilities and Access:** Availability, quality, and obligations for maintenance of utilities including water, sewer, electric, gas, communication services, stormwater management, and means of access to the Property and amenities.

    (ix) **Streets/Roads:** Investigation of the status of the street/road upon which the Property fronts as well as any other street/road used to access the Property, including: (1) whether any street(s)/road(s) are public or private, (2) whether any street(s)/road(s) designated as public are accepted for maintenance by the State of NC or any municipality, or (3) if private or not accepted for public maintenance, the consequences and responsibility for maintenance and the existence, terms and funding of any maintenance agreements.

    (x) **Special Assessments:** Investigation of the existence of Special Assessments that may be under consideration by a

Buyer's initials _MD_    Seller's initials _DR_

Case 1:23-cv-00056-MGC-WCM   Document 1-1   Filed 12/21/23   Page 17 of 46

Buyer intends to obtain funds from the following other source(s) in order to purchase the Property: _____

_____

_____

> **NOTE:** Buyer's obligations under this Contract are not conditioned upon obtaining any loan(s) or other funds from sources other than Buyer's own assets. Some mortgage loan programs and other programs providing funds for the purchase of property selected by Buyer may impose repair obligations and/or additional conditions or costs upon Seller or Buyer, and more information may be needed.
> Material changes with respect to funding the purchase of the Property that affect the terms of the contract are material facts that must be disclosed.

**(b) Other Property:** Buyer ❑ DOES ☒ DOES NOT have to sell or lease other real property in order to qualify for a new loan or to complete the purchase. *(Complete the following only if Buyer DOES have to sell or lease other real property:)*

Other Property Address: _____

❑ *(Check if applicable)* Buyer's other property IS under contract as of the date of this offer, and a copy of the contract has either been previously provided to Seller or accompanies this offer. *(Buyer may mark out any confidential information, such as the purchase price and the buyer's identity, prior to providing a copy of the contract to Seller.)* Failure to provide a copy of the contract shall not prevent this offer from becoming a binding contract; however, SELLER IS STRONGLY ENCOURAGED TO OBTAIN AND REVIEW THE CONTRACT ON BUYER'S PROPERTY PRIOR TO ACCEPTING THIS OFFER.

❑ *(Check if applicable)* Buyer's other property IS NOT under contract as of the date of this offer. Buyer's property *(check only ONE of the following options)*:
   ❑ is listed with and actively marketed by a licensed real estate broker.
   ❑ will be listed with and actively marketed by a licensed real estate broker.
   ❑ Buyer is attempting to sell/lease the Buyer's Property without the assistance of a licensed real estate broker.

> **NOTE:** This Contract is NOT conditioned upon the sale/lease or closing of Buyer's other property. If the parties agree to make this Contract conditioned on a sale/lease or closing of Buyer's other property, an appropriate contingency addendum should be drafted by a North Carolina real estate attorney and added to this Contract.

**(c) Performance of Buyer's Financial Obligations:** To the best of Buyer's knowledge, there are no other circumstances or conditions existing as of the date of this offer that would prohibit Buyer from performing Buyer's financial obligations in accordance with this Contract, except as may be specifically set forth herein.

**(d) Residential Property and Owners' Association Disclosure Statement** *(check only one)*:
☒ Buyer has received a signed copy of the N.C. Residential Property and Owners' Association Disclosure Statement prior to making this offer and acknowledges compliance with N.C.G.S. 47E-5 (Residential Property Disclosure Act).
❑ Buyer has NOT received a signed copy of the N.C. Residential Property and Owners' Association Disclosure Statement prior to making this offer and shall have the right to terminate or withdraw this Contract without penalty (including a refund of any Due Diligence Fee) prior to WHICHEVER OF THE FOLLOWING EVENTS OCCURS FIRST: (1) the end of the third calendar day following receipt of the Disclosure Statement; (2) the end of the third calendar day following the Effective Date; or (3) Settlement or occupancy by Buyer in the case of a sale or exchange.
❑ Exempt from N.C. Residential Property and Owners' Association Disclosure Statement because (SEE GUIDELINES): _____

**(e) Mineral and Oil and Gas Rights Mandatory Disclosure Statement** *(check only one)*:
☒ Buyer has received a signed copy of the N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement prior to making this offer and acknowledges compliance with N.C.G.S. 47E-5 (Residential Property Disclosure Act).
❑ Buyer has NOT received a signed copy of the N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement prior to making this offer and shall have the right to terminate or withdraw this Contract without penalty (including a refund of any Due Diligence Fee) prior to WHICHEVER OF THE FOLLOWING EVENTS OCCURS FIRST: (1) the end of the third calendar day following receipt of the Disclosure Statement; (2) the end of the third calendar day following the Effective Date; or (3) Settlement or occupancy by Buyer in the case of a sale or exchange.

❑ Exempt from N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement because (SEE GUIDELINES): _____

_____

Buyer's initials ⟨MD⟩   Seller's initials DR   18/46

Case 3:02-cv-00360-MGC-WGM   Document 1-1   Filed 2/25/22   Page 18 of 46

DocuSign Envelope ID: 247E92B2-62B9-46B4-9A68-49BE8EEED0E4

(c) **Sale/Lease of Existing Property:** As noted in paragraph 5(b), unless otherwise provided in an addendum, this Contract is not conditioned upon the sale/lease or closing of other property owned by Buyer. Therefore, if Buyer must sell or lease other real property in order to qualify for a new loan or to otherwise complete the purchase of the Property, Buyer should seek to close on Buyer's other property prior to the end of the Due Diligence Period or be reasonably satisfied that closing on Buyer's other property will take place prior to the Settlement Date of this Contract.

(d) **Repair/Improvement Negotiations/Agreement:** Buyer acknowledges and understands the following:
- Unless the parties agree otherwise, THE PROPERTY IS BEING SOLD IN ITS CURRENT CONDITION.
- Seller may, but is not required to, engage in negotiations for repairs/improvements to the Property.

Buyer is advised to make any repair/improvement requests in sufficient time to allow negotiations to be concluded prior to the expiration of the Due Diligence Period. Any agreement that the parties may reach with respect to repairs/improvements is an addition to this Contract that must be in writing and signed by the parties in accordance with Paragraph 19.

> **NOTE:** See Paragraph 8(c), Access to Property and Paragraph 8(m), Negotiated Repairs/Improvements.

(e) **Buyer's Obligation to Repair Damage:** Buyer shall, at Buyer's expense, promptly repair any damage to the Property resulting from any activities of Buyer and Buyer's agents and contractors, but Buyer shall not be responsible for any damage caused by accepted practices either approved by the N.C. Home Inspector Licensure Board or applicable to any other N.C. licensed professional performing reasonable appraisals, tests, surveys, examinations and inspections of the Property. This repair obligation shall survive any termination of this Contract.

(f) **Indemnity:** Buyer will indemnify and hold Seller harmless from all loss, damage, claims, suits or costs, which shall arise out of any contract, agreement, or injury to any person or property as a result of any activities of Buyer and Buyer's agents and contractors relating to the Property except for any loss, damage, claim, suit or cost arising out of pre-existing conditions of the Property and/or out of Seller's negligence or willful acts or omissions. This indemnity shall survive this Contract and any termination hereof.

(g) **Buyer's Right to Terminate:** Provided that Buyer has delivered any agreed-upon Due Diligence Fee, Buyer shall have the right to terminate this Contract for any reason or no reason, by delivering to Seller written notice of termination (the "Termination Notice") during the Due Diligence Period (or any agreed-upon written extension of the Due Diligence Period), *TIME BEING OF THE ESSENCE*. If Buyer timely delivers the Termination Notice, this Contract shall be terminated and the Earnest Money Deposit shall be refunded to Buyer.

(h) **CLOSING SHALL CONSTITUTE ACCEPTANCE OF THE PROPERTY IN ITS THEN EXISTING CONDITION UNLESS PROVISION IS OTHERWISE MADE IN WRITING.**

**5. BUYER REPRESENTATIONS:**
(a) **Funds to complete purchase:**
☒ (*Check if applicable*) Cash. Buyer intends to pay cash in order to purchase the Property and does not intend to obtain a loan or funds from sources other than Buyer's own assets. Verification of cash available for Settlement is ☒ is not ☐ attached.

> **NOTE:** If Buyer does not intend to obtain a new loan(s) and/or funds from sources other than Buyer's own assets, Seller is advised, prior to signing this offer, to obtain documentation from Buyer which demonstrates that Buyer will be able to close on the Property without the necessity of obtaining a loan or funds from sources other than Buyer's own assets.

**OR:**
☐ (*Check if applicable*) Loan(s)/Other Funds: Buyer intends to obtain a loan(s) and/or other funds to purchase the Property from the following sources (*check all applicable sources*):
☐ First Mortgage Loan:
Buyer intends to obtain a first mortgage loan of the following type in order to purchase the Property: ☐ FHA ☐ VA (attach FHA/VA Financing Addendum) ☐ Conventional ☐ USDA ☐ Other type: _____

in the principal amount of _____ plus any financed VA Funding Fee or FHA MIP.

☐ Second Mortgage Loan:
Buyer intends to obtain a second mortgage loan of the following type in order to purchase the Property: _____

☐ Other funds: _____

Buyer's initials _MD_   Seller's initials _DB_   19/46

**STANDARD FORM 2-T**
Revised 7/2022
© 7/2022

Case 1:22-cv-00266-MOC-WCM   Document 1-1   Filed 12/21/22   Page 19 of 46

DocuSign Envelope ID: 247E92B2-B2B9-45B4-9A68-49BF8FEED0F4

Owners' association website address, if any _____

(d) **Fuel Tank(s)/Fuel:** To the best of Seller's knowledge, there ☐ is ☒ is not a fuel tank(s) located on the Property. *If "yes" complete the following:*
  (i) **Description:**
   ☐ Tank 1:
   - **Use:** ☐ currently in use ☐ currently NOT in use
   - **Ownership:** ☐ owned ☐ leased. If leased, name and contact information of tank lessor: _____

   - **Location:** ☐ above ground ☐ below ground
   - **Type of fuel:** ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____
   - **Name and contact information of fuel vendor:** _____
   ☐ Tank 2:
   - **Use:** ☐ currently in use ☐ currently NOT in use
   - **Ownership:** ☐ owned ☐ leased. If leased, name and contact information of tank lessor: _____

   - **Location:** ☐ above ground ☐ below ground
   - **Type of fuel:** ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____
   - **Name and contact information of fuel vendor:** _____
  (ii) **Tank(s) Included in sale:** Buyer and Seller agree that any tank described above that is owned by Seller shall be included in the sale as part of the Purchase Price free of liens, unless excluded in paragraph 2(e) above.
  (iii) **Fuel:** Seller may use fuel in the tank(s) described above through Settlement, but may not otherwise remove the fuel or resell it. Any fuel remaining in the tank(s) as of Settlement shall be included in the sale as part of the Purchase Price, free of liens.
   - Seller's use of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer.

> **NOTE:** Buyer shall be entitled to conduct inspections to confirm the existence, type and ownership of any fuel tank located on the Property. Buyer is advised to consult with the owner of any leased fuel tank regarding the terms under which Buyer may lease the tank and obtain fuel.

> **NOTE:** State law provides that it is unlawful for any person, other than the supplier or the owner of a fuel supply tank, to disconnect, interrupt or fill the supply tank with liquefied petroleum gas (LP gas or propane) without the consent of the supplier.

**8. SELLER OBLIGATIONS:**
  (a) **Evidence of Title, Payoff Statement(s) and Non Foreign Status:**
   (i) Seller agrees to use best efforts to provide to the closing attorney as soon as reasonably possible after the Effective Date, copies of all title information in possession of or available to Seller, including but not limited to: title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust, leases, and easements relating to the Property.
   (ii) Seller shall provide to the closing attorney all information needed to obtain a written payoff statement from any lender(s) regarding any security interest in the Property as soon as reasonably possible after the Effective Date, and Seller designates the closing attorney as Seller's agent with express authority to request and obtain on Seller's behalf payoff statements and/or short-pay statements from any such lender(s).
   (iii) If Seller is not a foreign person as defined by the Foreign Investment in Real Property Tax Act, Seller shall also provide to the closing attorney a non-foreign status affidavit (pursuant to the Foreign Investment in Real Property Tax Act). In the event Seller shall not provide a non-foreign status affidavit, Seller acknowledges that there may be withholding as provided by the Internal Revenue Code.

  (b) **Authorization to Disclose Information:** Seller authorizes: (i) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Buyer and both Buyer's and Seller's agents and attorneys; (ii) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to

Buyer and both Buyer's and Seller's agents and attorneys and (iii) the closing attorney to release and disclose any seller's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

Buyer's initials __MD__   Seller's initials __DR__     20/46

STANDARD FORM 2-T
Revised 7/2022
© 7/2022

Case 1:22-cv-00965-MOC-WCM   Document 1-1   Filed 12/21/22   Page 20 of 46

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED064

Buyer's receipt of a mineral and Oil and Gas Rights mandatory Disclosure Statement does not modify or limit the obligations of Seller under Paragraph 8(g) of this Contract and shall not constitute the assumption or approval by Buyer of any severance of mineral and/or oil and gas rights, except as may be assumed or specifically approved by Buyer in writing.

> **NOTE:** The parties are advised to consult with a NC attorney prior to signing this Contract if severance of mineral and/or oil and gas rights has occurred

## 6. BUYER OBLIGATIONS:

(a) **Responsibility for Special Assessments:** Buyer shall take title subject to all Special Assessments that may be approved following Settlement.

(b) **Responsibility for Certain Costs:** Buyer shall be responsible for all costs with respect to:
    (i) any loan obtained by Buyer;
    (ii) charges by an owners' association or a management company/vendor as agent of the association under paragraph 9(b) of this Contract;
    (iii) appraisal;
    (iv) title search;
    (v) title insurance;
    (vi) any fees charged by the closing attorney for the preparation of the Closing Disclosure, Seller Disclosure and any other settlement statement;
    (vii) recording the deed; and
    (viii) preparation and recording of all instruments required to secure the balance of the Purchase Price unpaid at Settlement.

(c) **Authorization to Disclose Information:** Buyer authorizes the Buyer's lender(s), the parties' real estate agent(s) and closing attorney: (1) to provide this Contract to any appraiser employed by Buyer or by Buyer's lender(s); and (2) to release and disclose any buyer's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

## 7. SELLER REPRESENTATIONS:

(a) **Ownership:** Seller represents that Seller:
☒ has owned the Property for at least one year.
☐ has owned the Property for less than one year.
☐ does not yet own the Property.

(b) **Lead-Based Paint** (*check if applicable*):
☒ The Property is residential and was built prior to 1978 (Attach Lead-Based Paint or Lead-Based Paint Hazards Disclosure Addendum {Standard Form 2A9-T}).

(c) **Owners' Association(s) and Dues:** Seller authorizes and directs any owners' association, any management company of the owners' association, any insurance company and any attorney who has previously represented the Seller to release to Buyer, Buyer's agents, representative, closing attorney or lender true and accurate copies of the following items affecting the Property, including any amendments:

- Seller's statement of account
- master insurance policy showing the coverage provided and the deductible amount
- Declaration and Restrictive Covenants
- Rules and Regulations
- Articles of Incorporation
- Bylaws of the owners' association
- current financial statement and budget of the owners' association
- parking restrictions and information
- architectural guidelines

☐ (specify name of association): _____ whose regular assessments ("dues") are $_____ per_____. The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____

☐ (specify name of association): _____ whose regular assessments ("dues") are $_____ per_____. The name, address and telephone number of the president of the owners' association or the association manager is: _____

Buyer's initials _MD_  Seller's initials _DR_  2/46

**STANDARD FORM 2-T**
Revised 7/2022
© 7/2022

Case 1:22-cv-00266-MOC-WCM Document 1-1 Filed 12/21/22 Page 21 of 46

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

(c) **Access to Property:** Seller shall provide reasonable access to the Property through the earlier of Closing or possession by Buyer, including, but not limited to, allowing Buyer and/or Buyer's agents or representatives, an opportunity to (i) conduct Due Diligence, (ii) verify the satisfactory completion of negotiated repairs/improvements, and (iii) conduct a final walk-through inspection of the Property. Seller's obligation includes providing existing utilities operating at Seller's cost, including any connections and de-winterizing.

> **NOTE:** See WARNING in paragraph 4 above for limitation on Buyer's right to terminate this Contract as a result of Buyer's continued investigation of the Property following the expiration of the Due Diligence Period.

(d) **Removal of Seller's Property:** Seller shall remove, by the date possession is made available to Buyer, all personal property which is not a part of the purchase and all garbage and debris from the Property.

(e) **Affidavit and Indemnification Agreement:** Seller shall furnish at Settlement an affidavit(s) and indemnification agreement(s) in form satisfactory to Buyer and Buyer's title insurer, if any, executed by Seller and any person or entity who has performed or furnished labor, services, materials or rental equipment to the Property within 120 days prior to the date of Settlement and who may be entitled to claim a lien against the Property as described in N.C.G.S. §44A-8 verifying that each such person or entity has been paid in full and agreeing to indemnify Buyer, Buyer's lender(s) and Buyer's title insurer against all loss from any cause or claim arising therefrom.

(f) **Designation of Lien Agent, Payment and Satisfaction of Liens:** If required by N.C.G.S. §44A-11.1, Seller shall have designated a Lien Agent, and Seller shall deliver to Buyer as soon as reasonably possible a copy of the appointment of Lien Agent. All deeds of trust, deferred ad valorem taxes, liens and other charges against the Property, not assumed by Buyer, must be paid and satisfied by Seller prior to or at Settlement such that cancellation may be promptly obtained following Closing. Seller shall remain obligated to obtain any such cancellations following Closing.

(g) **Good Title, Legal Access:** Seller shall execute and deliver a GENERAL WARRANTY DEED for the Property in recordable form no later than Settlement, which shall convey fee simple marketable and insurable title, without exception for mechanics' liens, and free of any other liens, encumbrances or defects, including those which would be revealed by a current and accurate survey of the Property, except: ad valorem taxes for the current year (prorated through the date of Settlement); utility easements and unviolated covenants, conditions or restrictions that do not materially affect the value of the Property; and such other liens, encumbrances or defects as may be assumed or specifically approved by Buyer in writing. The Property must have legal access to a public right of way.

> **NOTE:** Buyer's failure to conduct a survey or examine title of the Property, prior to the expiration of the Due Diligence Period does not relieve the Seller of their obligation to deliver good title under this paragraph.

> **NOTE:** If any sale of the Property may be a "short sale," consideration should be given to attaching a Short Sale Addendum (Standard Form 2A14-T) as an addendum to this Contract.

(h) **Deed, Taxes and Fees:** Seller shall pay for preparation of a deed and all other documents necessary to perform Seller's obligations under this Contract, and for state and county excise taxes, and any deferred, discounted or rollback taxes, and local conveyance fees required by law. The deed is to be made to: **Michael Davis**

(i) **Agreement to Pay Buyer Expenses:** Seller shall pay at Settlement $_____ toward any of Buyer's expenses associated with the purchase of the Property, at the discretion of Buyer and/or lender, if any, including any FHA/VA lender and inspection costs that Buyer is not permitted to pay.

> **NOTE:** Parties should review the FHA/VA Addendum prior to entering an amount in Paragraph 8(i). Certain FHA/VA lender and inspection costs CANNOT be paid by Buyer at Settlement and the amount of these should be included in the blank above.

(j) **Owners' Association Fees/Charges:** Seller shall pay any charges by an owners' association or a management company/vendor as agent of the association under paragraph 9(a) of this Contract.

(k) **Payment of Special Assessments:** Seller shall pay, in full at Settlement, all Special Assessments that are approved prior to Settlement, whether payable in a lump sum or future installments, provided that the amount thereof can be reasonably determined or estimated. The payment of such estimated amount shall be the final payment between the Parties.

Buyer's initials ___MD___   Seller's initials __DR__   22/46

Case 1:22-cv-00366-MOC-WCM   Document 1-1   Filed 12/21/22   Page 22 of 46

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

(l) **Late Listing Penalties**: All property tax late listing penalties, if any, shall be paid by Seller.

(m) **Negotiated Repairs/Improvements**: Negotiated repairs/improvements shall be made in a good and workmanlike manner and Buyer shall have the right to verify same prior to Settlement.

(n) **Home Warranty** (*Select one of the following*):
- ☒ No home warranty is to be provided by Seller.
- ☐ Buyer may obtain a one-year home warranty at a cost not to exceed $_____ which includes sales tax and Seller agrees to pay for it at Settlement.
- ☐ Seller has obtained and will provide a one-year home warranty from _____ at a cost of $_____ which includes sales tax and will pay for it at Settlement.

> **NOTE**: Home warranties typically have limitations on and conditions to coverage. Refer specific questions to the home warranty company.

(o) **Seller's Breach of Contract**: See paragraph 23 for Buyer's remedies in the event of breach of this Contract.

**9. CHARGES BY OWNERS' ASSOCIATION**: Responsibility for payment of charges by an owners' association or a management company/vendor as agent of the association shall be allocated between Buyer and Seller as follows:

(a) **Seller shall pay**:
(i) fees incurred by Seller in completing the Residential Property and Owners' Association Disclosure Statement, and resale or other certificates related to a proposed sale of the Property;
(ii) fees required for confirming Seller's account payment information on owners' association dues or assessments for payment or proration, including any expedite fee permitted under N.C. Gen. Stat. § 47F-3-102 that is charged in connection with providing such information;
(iii) any fees charged for transferring or updating ownership records of the association; and
(iv) any fees other than those fees specifically required to be paid by Buyer under paragraph 9(b) below.

(b) **Buyer shall pay**:
(i) charges for providing information required by Buyer's lender;
(ii) charges for working capital contributions, membership fees, or charges imposed for Buyer's use of the common elements and/or services provided to Buyer in connection with Buyer taking possession of the Property, such as "move-in fees"; and
(iii) charges for determining restrictive covenant compliance.

**10. PRORATIONS AND ADJUSTMENTS**: Unless otherwise agreed, the following items shall be prorated, with Seller responsible for the prorated amounts of any taxes and dues through the date of Settlement, and Seller entitled to the amount of prorated rents through the date of Settlement, and either adjusted between the parties or paid at Settlement:

(a) **Taxes on Real Property**: Ad valorem taxes and recurring governmental service fees levied with such taxes on real property shall be prorated on a calendar year basis;

(b) **Taxes on Personal Property**: Ad valorem taxes on personal property for the entire year shall be paid by Seller unless the personal property is conveyed to Buyer, in which case, the personal property taxes shall be prorated on a calendar year basis;

(c) **Rents**: Rents, if any, for the Property;

(d) **Dues**: Owners' association regular assessments (dues) and other like charges.

**11. CONDITION OF PROPERTY/RISK OF LOSS**:

(a) **Condition of Property at Settlement**: If the Property is not in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted, Buyer may terminate this Contract by written notice delivered to Seller and the Due Diligence Fee and Earnest Money Deposit shall be refunded to Buyer. If the Property is not in such condition and Buyer does NOT elect to terminate this Contract, Buyer shall be entitled to receive, in addition to the Property, the proceeds of any insurance claim filed by Seller on account of any damage or destruction to the Property.

(b) **Risk of Loss**: The risk of loss or damage by fire or other casualty prior to Closing shall be upon Seller. Seller is advised not to cancel existing insurance on the Property until after confirming recordation of the deed.

Buyer's initials _MD_    Seller's initials _DR_    23/46

Case 1:23-cv-00206-MOC-WCM Document 1-1 Filed 10/12/23 Page 23 of 46

DocuSign Envelope ID: 247E92B2-62B9-45B4-9A68-49BF8FEED0F4

**12. DELAY IN SETTLEMENT/CLOSING:** This paragraph shall apply if one party is ready, willing and able to complete Settlement on the Settlement Date ("Non-Delaying Party") but it is not possible for the other party to complete Settlement by the Settlement Date ("Delaying Party"). In such event, the Delaying Party shall be entitled to a delay in Settlement and shall give as much notice as possible to the Non-Delaying Party and closing attorney. If the Delaying Party fails to complete Settlement and Closing within seven (7) days of the Settlement Date (including any amended Settlement Date agreed to in writing by the parties), then the Delaying Party shall be in breach and the Non-Delaying Party may terminate this Contract and shall be entitled to enforce any remedies available to such party under this Contract for the breach.

**13. POSSESSION:** Possession, including all means of access to the Property (keys, codes including security codes, garage door openers, electronic devices, etc.), shall be delivered upon Closing as defined in Paragraph 1(m) unless otherwise provided below:
- ❏ A Buyer Possession Before Closing Agreement is attached (Standard Form 2A7-T)
- ❏ A Seller Possession After Closing Agreement is attached (Standard Form 2A8-T)
- ❏ Possession is subject to rights of tenant(s)

> **NOTE:** Consider attaching Additional Provisions Addendum (Form 2A11-T) or Vacation Rental Addendum (Form 2A13-T)

**14. ADDENDA:** CHECK ALL STANDARD ADDENDA THAT MAY BE A PART OF THIS CONTRACT, IF ANY, AND ATTACH HERETO. ITEMIZE ALL OTHER ADDENDA TO THIS CONTRACT, IF ANY, AND ATTACH HERETO.

- ❏ Additional Provisions Addendum (Form 2A11-T)
- ❏ Additional Signatures Addendum (Form 3-T)
- ❏ Back-Up Contract Addendum (Form 2A1-T)
- ❏ FHA/VA Financing Addendum (Form 2A4-T)
- ☑ Lead-Based Paint Or Lead-Based Paint Hazard Addendum (Form 2A9-T)
- ❏ Loan Assumption Addendum (Form 2A6-T)

- ❏ New Construction Addendum (Form 2A3-T)
- ❏ Owners' Association Disclosure Addendum (Form 2A12-T)
- ❏ Seller Financing Addendum (Form 2A5-T)
- ❏ Short Sale Addendum (Form 2A14-T)
- ❏ Vacation Rental Addendum (Form 2A13-T)

❏ Identify other attorney or party drafted addenda: _____

> **NOTE: UNDER NORTH CAROLINA LAW, REAL ESTATE BROKERS ARE NOT PERMITTED TO DRAFT ADDENDA TO THIS CONTRACT.**

**15. ASSIGNMENTS:** This Contract may not be assigned without the written consent of all parties except in connection with a tax-deferred exchange, but if assigned by agreement, then this Contract shall be binding on the assignee and assignee's heirs and successors.

**16. TAX-DEFERRED EXCHANGE:** In the event Buyer or Seller desires to effect a tax-deferred exchange in connection with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange; provided, however, that the exchanging party shall be responsible for all additional costs associated with such exchange, and provided further, that a non-exchanging party shall not assume any additional liability with respect to such tax-deferred exchange. Buyer and Seller shall execute such additional documents, including assignment of this Contract in connection therewith, at no cost to the non-exchanging party, as shall be required to give effect to this provision.

**17. PARTIES:** This Contract shall be binding upon and shall inure to the benefit of Buyer and Seller and their respective heirs, successors and assigns. As used herein, words in the singular include the plural and the masculine includes the feminine and neuter genders, as appropriate.

**18. SURVIVAL:** If any provision herein contained which by its nature and effect is required to be observed, kept or performed after the Closing, it shall survive the Closing and remain binding upon and for the benefit of the parties hereto until fully observed, kept or performed.

**19. ENTIRE AGREEMENT:** This Contract contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed herein. All changes, additions or deletions hereto must be in writing and signed by all parties. Nothing contained herein shall alter any agreement between a REALTOR® or broker and Seller or Buyer as contained in any listing agreement, buyer agency agreement, or any other agency agreement between them.

**20. CONDUCT OF TRANSACTION:** The parties agree that any action between them relating to the transaction contemplated by this Contract may be conducted by electronic means, including the signing of this Contract by one or more of them and any notice or communication given in connection with this Contract. Any written notice or communication may be transmitted to any mailing address, e-mail address or fax number set forth in the "Notice Information" section below. Any notice or communication to be given to a party

Buyer's initials [MD] _____ Seller's initials DR _____

24/46

**STANDARD FORM 2-T**
Revised 7/2022
© 7/2022

ocuSign Envelope ID: 247ES2B2-82B8-45B4-9A68-49BF8FEED0F4

Delivery of any notice to a party via means of electronic transmission shall be deemed complete at such time as the sender performs the final act to send such transmission, in a form capable of being processed by the receiving party's system, to any electronic address provided for such party in the "Notice Information" section below. Seller and Buyer agree that the "Notice Information" and "Acknowledgment of Receipt of Monies" sections below shall not constitute a material part of this Contract, and that the addition or modification of any information therein shall not constitute a rejection of an offer or the creation of a counteroffer.

**21. EXECUTION:** This Contract may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument.

**22. COMPUTATION OF DAYS/TIME OF DAY:** Unless otherwise provided, for purposes of this Contract, the term "days" shall mean consecutive calendar days, including Saturdays, Sundays, and holidays, whether federal, state, local or religious. For the purposes of calculating days, the count of "days" shall begin on the day following the day upon which any act or notice as provided in this Contract was required to be performed or made. Any reference to a date or time of day shall refer to the date and/or time of day in the State of North Carolina.

**23. REMEDIES:**

(a) **Breach by Buyer:** In the event of material breach of this Contract by Buyer, Seller shall be entitled to any Earnest Money Deposit. The payment of any Earnest Money Deposit and any Due Diligence Fee to Seller (without regard to their respective amounts, including zero) together shall serve as liquidated damages ("Liquidated Damages") and as Seller's sole and exclusive remedy for such breach, but without limiting Seller's rights under Paragraphs 4(e) and 4(f) for damage to the Property. It is acknowledged by the parties that the amount of the Liquidated Damages is compensatory and not punitive, such amount being a reasonable estimation of the actual loss that Seller would incur as a result of a breach of this Contract by Buyer. The payment to Seller of the Liquidated Damages shall not constitute a penalty or forfeiture but actual compensation for Seller's anticipated loss, both parties acknowledging the difficulty of determining Seller's actual damages for such breach.

(b) **Breach by Seller:** In the event of material breach of this Contract by Seller, Buyer may (i) elect to terminate this Contract as a result of such breach, and shall be entitled to return of both the Earnest Money Deposit and the Due Diligence Fee, together with the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence ("Due Diligence Costs"), or (ii) elect not to terminate and instead treat this Contract as remaining in full force and effect and seek the remedy of specific performance.

(c) **Attorneys' Fees:** If legal proceedings are brought by Buyer or Seller against the other to collect the Earnest Money Deposit, Due Diligence Fee, or Due Diligence Costs, the parties agree that a party shall be entitled to recover reasonable attorneys' fees to the extent permitted under N.C. Gen. Stat. § 6-21.2. The parties acknowledge and agree that the terms of this Contract with respect to entitlement to the Earnest Money Deposit, Due Diligence Fee, or Due Diligence Costs each constitute an "evidence of indebtedness" pursuant to N.C. Gen. Stat. § 6-21.2.

> **NOTE:** A party seeking recovery of attorneys' fees under N.C. Gen. Stat. § 6-21.2 must first give written notice to the other party that they have five (5) days from the mailing of the notice to pay the outstanding amount(s) without the attorneys' fees.

ADDITIONAL CONDITIONS:

In the case there are termites, or that the crawlspace moisture problem is determined by the buyer or his agent to be structurally damaging to the framework or requiring of professional mold abatement, the buyer is entitled to the return of 50% ($500) of the due dilligence fee and 100% of the earnest money deposit. In this case, the buyer and seller would seek a fair renegotiation of the purchase price in good faith.

As a modification of Section 5b, certain of the buyer's funds are the result of a real estate sale that is scheduled to close today, October 19, 2022.
[THIS SPACE INTENTIONALLY LEFT BLANK]

Buyer's initials  ___ Seller's initials ___

Case 1:22-cv-00936-MOC-WCM   Document 1-1   Filed 12/21/22   Page 25 of 46

## NOTICE INFORMATION

**NOTE:** INSERT AT LEAST ONE ADDRESS AND/OR ELECTRONIC DELIVERY ADDRESS EACH PARTY AND AGENT APPROVES FOR THE RECEIPT OF ANY NOTICE CONTEMPLATED BY THIS CONTRACT. INSERT "N/A" FOR ANY WHICH ARE NOT APPROVED.

**BUYER NOTICE ADDRESS:**

Mailing Address: Electronic Mail: michaeldavis@theunixplace.com

**SELLER NOTICE ADDRESS:**

Mailing Address: PO Box 392
Shelby NC 28151

Buyer Fax#: _____

Seller Fax#: _____

Buyer E-mail: _____

Seller E-mail: _____

### CONFIRMATION OF AGENCY/NOTICE ADDRESSES

Selling Firm Name: **Broad River Properties, LLC**
Acting as ☐ Buyer's Agent ☐ Seller's (sub)Agent ☒ Dual Agent
Firm License #: **C36706**
Mailing Address: **211 S. Washington Street**
**Shelby, NC 28150**

Listing Firm Name: **Broad River Properties, LLC**
Acting as ☐ Seller's Agent ☒ Dual Agent
Firm License #: **C36706**
Mailing Address: **211 S. Washington Street**
**Shelby, NC 28150**

Individual Selling Agent: **Niki Wood**
☐ Acting as a Designated Dual Agent (check only if applicable)
Selling Agent License #: **329906**
Selling Agent Phone #: **704-284-3333**
Selling Agent Fax # : _____
Selling Agent E-mail: **nwood@broadriverproperties.com**

Individual Listing Agent: **Niki Wood**
☐ Acting as a Designated Dual Agent (check only if applicable)
Listing Agent License #: **329906**
Listing Agent Phone #: **704-284-3333**
Listing Agent Fax #: _____
Listing Agent E-mail: **nwood@broadriverproperties.com**

[THIS SPACE INTENTIONALLY LEFT BLANK]

Page 15 of 16

Buyer's initials MD       Seller's initials DR

26/46

STANDARD FORM 2-T
Revised 7/2022
© 7/2022

DocuSign Envelope ID: 247E82B2-62B9-45B4-9A86-49BF8FEED0FA

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. AND THE NORTH CAROLINA BAR ASSOCIATION MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA REAL ESTATE ATTORNEY BEFORE YOU SIGN IT.

This offer shall become a binding contract on the Effective Date. Unless specifically provided otherwise, Buyer's failure to timely deliver any fee, deposit or other payment provided for herein shall not prevent this offer from becoming a binding contract, provided that any such failure shall give Seller certain rights to terminate the contract as described herein or as otherwise permitted by law.

Date: 10/19/2022

Buyer: Mr. Michael Davis
_____7252FA03570249A_____

Date: _____

Buyer: _____

_____

Entity Buyer: _____

(Name of LLC/Corporation/Partnership/Trust/etc.)

By _____

Name: _____
              Print Name
Title: _____

Date: _____

Date: 10-20-2022

Seller: Qile R o

Date: _____

Seller: _____

_____

Entity Seller: _____

(Name of LLC/Corporation/Partnership/Trust/etc.)

By _____

Name: _____
              Print Name
Title: _____

Date: _____

## WIRE FRAUD WARNING

TO BUYERS: BEFORE SENDING ANY WIRE, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO VERIFY THE INSTRUCTIONS. IF YOU RECEIVE WIRING INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH LOCATION, ACCOUNT NAME OR ACCOUNT NUMBER, THEY SHOULD BE PRESUMED FRAUDULENT. DO NOT SEND ANY FUNDS AND CONTACT THE CLOSING ATTORNEY'S OFFICE IMMEDIATELY.

TO SELLERS: IF YOUR PROCEEDS WILL BE WIRED, IT IS RECOMMENDED THAT YOU PROVIDE WIRING INSTRUCTIONS AT CLOSING IN WRITING IN THE PRESENCE OF THE ATTORNEY. IF YOU ARE UNABLE TO ATTEND CLOSING, YOU MAY BE REQUIRED TO SEND AN ORIGINAL NOTARIZED DIRECTIVE TO THE CLOSING ATTORNEY'S OFFICE CONTAINING THE WIRING INSTRUCTIONS. THIS MAY BE SENT WITH THE DEED, LIEN WAIVER AND TAX FORMS IF THOSE DOCUMENTS ARE BEING PREPARED FOR YOU BY THE CLOSING ATTORNEY. AT A MINIMUM, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO PROVIDE THE WIRE INSTRUCTIONS. THE WIRE INSTRUCTIONS SHOULD BE VERIFIED OVER THE TELEPHONE VIA A CALL TO YOU INITIATED BY THE CLOSING ATTORNEY'S OFFICE TO ENSURE THAT THEY ARE NOT FROM A FRAUDULENT SOURCE.

WHETHER YOU ARE A BUYER OR A SELLER, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE AT A NUMBER THAT IS INDEPENDENTLY OBTAINED. TO ENSURE THAT YOUR CONTACT IS LEGITIMATE, YOU SHOULD NOT RELY ON A PHONE NUMBER IN AN EMAIL FROM THE CLOSING ATTORNEY'S OFFICE, YOUR REAL ESTATE AGENT OR ANYONE ELSE.

STANDARD FORM 2-T
Revised 7/2022
© 7/2022

27/46

DocuSign Envelope ID: 247E92B2-82B9-45B4-9A68-49BF8FEED0F4

# ACKNOWLEDGMENT OF RECEIPT OF MONIES

Seller: _____ ("Seller")

Buyer: _____ ("Buyer")

Property Address: _____ ("Property")

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ☐ LISTING AGENT ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ _____, receipt of which Listing Agent hereby acknowledges.

Date _____     Firm: _____

By: _____
(Signature)

_____
(Print name)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ☐ SELLER ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ _____, receipt of which Seller hereby acknowledges.

Date _____     Seller: _____
(Signature)

Date _____     Seller: _____
(Signature)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ☐ ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF INITIAL EARNEST MONEY DEPOSIT

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an Initial Earnest Money Deposit in the amount of $ _____. Escrow Agent as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the Initial Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date _____     Firm : _____

By: _____
(Signature)

_____
(Print name)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ☐ ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF (ADDITIONAL) EARNEST MONEY DEPOSIT

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an (Additional) Earnest Money Deposit in the amount of $ _____. Escrow Agent as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the (Additional) Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date: _____     Firm: _____

Time: _____ ☐ AM ☐ PM     By: _____
(Signature)

_____
(Print name)

**STANDARD FORM 2-T**
Revised 7/2022
© 7/2022

2/46

Case 1:22-cv-00005-MOC-WCM   Document 1-1   Filed 01/21/22   Page 28 of 46

PROFESSIONAL SERVICES DISCLOSURE AND ELECTION
[See Guidelines (Form 760G) for instructions on completing this form]

Property Address: _____ ("Property")
Buyer or Seller: _____
Real Estate Firm: _____ ("Firm")

1. There are professional services that typically are performed in connection with the purchase and sale of real estate. Buyer or Seller understands that Firm cannot give advice in certain matters that may relate to the purchase or sale of the Property, including but not limited to matters of law, taxation, financing, surveying, wood-destroying insect infestation, structural soundness of engineering.

REGARDING EACH PROFESSIONAL SERVICE LISTED BELOW, BUYER OR SELLER SHOULD EITHER SELECT THE SERVICE OR ELECT NOT TO HAVE THE SERVICE PERFORMED. WITH RESPECT TO EACH SERVICE SELECTED, INDICATE WHO WILL ORDER THE SERVICE AND THE NAME OF THE SERVICE PROVIDER SELECTED BY BUYER OR SELLER. THIS FORM SHOULD BE AMENDED TO ADDRESS ADDITIONAL PROFESSIONAL SERVICES THAT ARE CONSIDERED AFTER IT IS FIRST COMPLETED.

| Service | Waived (Initial) | Selected (Initial) | Ordered By | Name(s) of Service Provider(s) |
|---|---|---|---|---|
| Accountant/CPA/Tax Advisor | | | | |
| Appraisal | | | | |
| Attorney (e.g. Title Exam/Title Ins./ Seller Document-Deed Prep/Closing) | | | | |
| Home Warranty | | | | |
| Inspections: | | | | |
|    Home | | | | |
|    HVAC | | | | |
|    Pool/Spa | | | | |
|    Radon*(see note below) | | | | |
|    Septic | | | | |
|    Well/Water Quality*(see note below) | | | | |
|    Wood/Pest Infestation | | | | |
|    Re-Inspections of agreed-upon repairs (if applicable) | | | | |

Page 1 of 3



EXHIBIT B

LATTIMORE & PEELER SURVEYING
105 LONDON ROAD   ( 704 ) 538-3443
LAWNDALE, NORTH CAROLINA   28090

Owner: Debra Raines Life Estate
Owner Address: 1656 A Cherryville Road
Shelby, NC 28151
Deed Ref: 1789-1847
Tax Map Ref: 2278-1-12L
Township: No. 5
County: Cleveland
State: North Carolina
Plat Prepared: Sept. 7, 2022
Scale 1"=150'






Prepared by: T. Brandon Jaynes, JPS Law, 414 N Lafayette St, Shelby, NC 28150
After recording return recording mail to:   GRANTOR(s)

**REVENUE STAMP**

**STATE OF NORTH CAROLINA**

**COUNTY OF CLEVELAND**

                                        **WARRANTY DEED**

THIS PROPERTY IS ( X) IS NOT ( ) THE PRIMARY RESIDENCE OF THE GRANTOR(S)

THIS DEED made this 2nd day of November, 2022, by and between

**DEBRA YVONNE RAINES, f/k/a DEBRA YVONNE HITE RAINES, Unmarried**

hereinafter referred to as "Grantor(s)" and

**MICHAEL DAVIS and wife, MICHELLE DAVIS, Tenants by the Entirety**

                        Address:    1656 Cherryville Road
                                    Cherryville, NC  28021

hereinafter referred to as "Grantee(s)".

        The designation "Grantor and Grantee" as used herein shall include said parties, their heirs, personal representatives, successors and assigns and shall include the singular, plural, masculine, feminine or neuter as required by the context.

        WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in Cleveland County, N.C., also known as Tax Parcel No. 16189, located at 1656 Cherryville Road, Cherryville, NC, 28021, and more particularly described as follows:

31/46

THE PROPERTY hereinbefore described was acquired by Grantor by instrument recorded in Book 1930, Page 1640, Cleveland County Registry.

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and privileges and appurtenances thereto belonging to the Grantee in fee simple.

AND the Grantor covenants with the Grantee, that the Grantor is seized of the premises in fee simple, had the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated.

TITLE to the property hereinabove described is subject to the following exceptions:

IN WITNESS WHEREOF, the Grantor(s) has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

*Debra Yvonne Raines* (Seal)
DEBRA YVONNE RAINES
a/k/a DEBRA YVONNE HITE RAINES

NORTH CAROLINA
Cleveland County

I, the undersigned, a Notary Public of the County and State aforesaid, certify that DEBRA YVONNE RAINES a/k/a DEBRA YVONNE HITE RAINES, Grantor(s) personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official stamp or seal, this the ___2nd___ day of November, 2022.

*Donna Hollifield*
Notary Public – Print Name

*Donna Hollifield*
Notary Public – Signature

My Commission Expires: ___02-05-2026___





MICHAEL DAVIS
[address lines]
[NORTH CAROLINA ...] ROAD
[...]VILLE, NC 280[..]
CLEVELAND COUNTY
[...]

## Exhibit "A"

Being known as Lot No. 1 of the Jason H. Carpenter old home place in No. Five (5) Township, Cleveland County, and bounded as follows:

BEGINNING at a [...] stake on the North side of State Highway No. 226, a new corner; and runs thence a [...] line, South 53 East 80 poles to a stake in the branch, a new corner; thence down the branch as it meanders, South 7 East 58 poles to a stake in the branch and in father's line, [...] thence with father's line [...] North 41-1/2 East 37-1/4 poles to an iron stake, [...] Carpenter's corner; thence with his line, North 4 East 94-1/2 poles to an iron stake, a corner and also the old corner, North 68-1/2 West 64 poles to an iron stake, a new corner; and then a new line, South 28 West 80 poles to the BEGINNING, containing [...] acres, more or less, according to a survey by A. E. Elliott, Surveyor, dated November 9, 1945.

Title Reference: Book 179, Page 1947, of the Cleveland County Registry.



# Residential Property Client Full w/photos

## 1656 Cherryville Road, Cherryville, NC 28021-9411

| | | | | | | |
|---|---|---|---|---|---|---|
| MLS#: | **3905968** | Category: | **Single Family** | Parcel ID: | **16189** | List Price: **$185,000** |
| Status: | **Active** | Tax Location: | **Cherryville** | County: | **Cleveland** | **Actual List Price** |
| Subdivision: | **None** | Tax Value: | **$147,587** | Zoning: | **R15** | |
| Subdivision: | | Zoning Desc: | | Deed Ref: | **1789-1847** | |
| Legal Desc: | **21.92AC HWY 150 LIFE ESTATE** | | | Lot/Unit #: | | |
| Approx Acres: | **12.00** | Approx Lot Dim: | | | | |
| Lot Desc: | **Fruit Trees, Hilly, Level, Open Lot, Private, Sloping, Stream/Creek, Trees, Wooded, Other - See Media/Remarks** | | | Elevation: | | |



### General Information
| | | | |
|---|---|---|---|
| Type: | **1 Story** | | |
| Style: | **Ranch** | | |
| Construction Type: | **Site Built** | | |

### School Information
| | |
|---|---|
| Elem: | **Washington Math/Science** |
| Middle: | **Burns Middle** |
| High: | **Burns** |

### HLA
| | | Non-HLA Sqft | | Bldg Information | |
|---|---|---|---|---|---|
| Main: | **1,052** | Main: **0** | | Beds: | **2** |
| Upper: | **0** | Upper: **0** | | Baths: | **2/0** |
| Third: | **0** | Third: **0** | | Year Built: | **1951** |
| Lower: | **0** | Lower: **0** | | New Const: | **No** |
| Bsmt: | **0** | Bsmt: **0** | | Prop Compl Date: | |
| Above Grade: | **1,052** | | | Construct Status: | **Complete** |
| Total Primary HLA: | **1,052** | Total: **0** | | Builder: | |
| | | | | Model: | |
| Additional Sqft: | **0** | | | Garage Sqft: | **0** |

### Additional Information
| | |
|---|---|
| Prop Fin: | **Cash, Conventional, FHA, FHA 203(K), Nonconforming Loan, USDA, VA** |
| Assumable: | **No** |
| Ownership: | **Seller owned for at least one year** |
| Special Conditions: | **None** |
| Road Responsibility: | **No Road** |

Recent: **09/20/2022 : NEWs : ->ACT**

## Room Information

| Room Level | Beds | Baths | Room Type |
|---|---|---|---|
| Main | 2 | 2/0 | Bathroom(s), Bedroom(s), Bed/Bonus, Bonus Room, Den, Kitchen, Laundry, Living Room, Sunroom |

## Features

| | | | | | |
|---|---|---|---|---|---|
| Lake/Water Amenities: | **None** | | | | |
| Parking: | **Carport - 2 Car** | | | Main Level Garage: | **No** |
| Driveway: | **Earth, Gravel** | | | | |
| Laundry: | **Main** | Doors/Windows: | **Storm Door(s)** | | |
| Foundation: | **Crawl Space, Slab** | Fixtures Exceptions: | **No** | | |
| Fireplaces: | **No** | | | | |
| Floors: | **Wood, Other - See Media/Remarks** | | | | |
| Equip: | **Ceiling Fan(s)** | | | | |
| Exterior Feat: | **Barn(s), Stable** | | | | |
| Exterior Covering: | **Aluminum, Vinyl, Wood** | | | | |
| Porch: | **Covered, Deck** | Roof: | **Metal** | | |

## Utilities

| | | | | | |
|---|---|---|---|---|---|
| Sewer: | **Septic Installed** | Water: | **Public Water** | | |
| HVAC: | **None** | | | Wtr Htr: | **Natural Gas** |

## Association Information

| | | | | | |
|---|---|---|---|---|---|
| Subject To HOA: | **None** | Subj to CCRs: | | HOA Subj Dues: | **No** |
| HOA Management: | **0** | HOA Phone: | **0000000000** | Assoc Fee: | **$0** |
| HOA Email: | **0** | HOA 2 Email: | | | |

## Remarks

**Public Remarks:** Have to see to appreciate this beautiful property! Pulling into this private gated entrance you will see how much this beautiful 12 acres has to offer. With a beautiful wooded border along the land and 2 creeks, one along the side and one across the back of the property. The land includes a large pole barn with a 4-inch concrete floor, a small stable built from sawmill lumber and fruit trees in various places. Natural spring on the property with original spring house that needs TLC. Property does have a pond that is no longer dammed. The home is vacant and selling AS IS but has a lot to offer. There is public water but is not connected to the house. Some updated electrical and plumbing work done on the home. It also has some original shiplap walls in some rooms. Lots of windows for natural lighting including a sunroom. Perfect opportunity to make this fixer upper your dream home on this beautiful acreage.

**Directions:** Coming from East Marion Street turn down Cherryville Road. Property on the right, and owner has put out orange cones to mark the drive way. If you get to the Dollar General on your right you have went too far. Coming from Waco/Cherryville Area heading toward Shelby property will be on your left about a half a mile from passing the Dollar General. Homes driveway is marked with orange cones.

## Listing Information

| | | | | | | |
|---|---|---|---|---|---|---|
| DOM: | **3** | CDOM: | **3** | Closed Dt: | | Slr Contr: |
| UC Dt: | | DDP-End Date: | | Close Price: | | LTC: |






Carport

EXHIBIT



Bathroom #1

Covered front porch

Working water line-not connected to home

Bathroom #2

Bathroom #2

Bathroom #2

Selling 12 acres

Prepared By: Melissa Bradshaw

©2022 Canopy MLS. All rights reserved. Information herein deemed reliable but not guaranteed. Generated on 09/23/2022 10:39:58 AM

Re: Pictures



# Michael Davis <michaeldavis@theunixplace.com>

Tue 10/18/2022 10:50 AM

To: Niki Wood <nwood@jpshub.com>

The survey looks fine. I don't use bankers, I do not have a bank account.
Is the old-fashioned, non-refundable deposit OK? I will be shopping
lawyers today, the closing will be as fast as the lawyer can do it.

On Tue, 18 Oct 2022, Niki Wood wrote:

> I'm so glad you like it!
> I have attached the survey layout.
> The 12 acres side is the what includes the home, creeks and barn.
> As soon as I can get to my computer I create the Offer To Purchase Form and
> send it to you. I will try to get it to you by 4pm today.
> The only thing I need from you prior to offer being accepted is a letter
> from your bank saying there are sufficient funds since it will be a cash
> offer.
>
> Have a great day! Please let me know if I can answer any additional
> questions.
>
>
> Get Outlook for iOS
>
> _____
> From: Michael Davis <michaeldavis@theunixplace.com>
> Sent: Tuesday, October 18, 2022 6:07:04 AM
> To: Niki Wood <nwood@jpshub.com>
> Subject: Pictures
> I received the pictures. It will be easy to finish fixing up that house.
> I like the way they did the roof first. I keep getting the impression
> that this house was set up and worked on by someone with ideas like mine.
> It is really the spring water that appeals, although I'm not against
> drilling a well. I am used to being off-grid...no bills!
> There are some power lines in a picture. They are regular ones, not high
> tension, so they are fine. High tension lines are held up by steel
> trusses. A plat would be nice. I think we should go ahead and get a
> contract. It would be nice to get the house fixed up while the season is
> still pretty good.
>
>
>

**Re: Other Property..**

**Michael Davis <michaeldavis@theunixplace.com>**
Sun 10/23/2022 2:06 PM
To: Niki Wood <nwood@jpshub.com>

Yes, that could be an option if I can afford it.


On Sun, 23 Oct 2022, Niki Wood wrote:

> Would you be interested in the additional acreage right beside you that the
> seller still owns?
> I'm not sure how much she would ask for, I was under impression she may sell
> it also later. It does have the Duke Energy easement. It's 10 acres. Most of
> it is wooded but a large portion is cleared and flat land.
>
>
>
>
> Get Outlook for iOS
>
> _____
> From: Michael Davis <michaeldavis@theunixplace.com>
> Sent: Saturday, October 22, 2022 3:53:54 PM
> To: Niki Wood <nwood@jpshub.com>
> Subject: Re: Other Property..
> It can either be a woodland property that I will put a house on later, or
> an already built house that is on a tiny lot for rental..two different
> ideas..
>
>
> On Sat, 22 Oct 2022, Niki Wood wrote:
>
> > I will also look to rentable properties with woodland. A lot of rented
> > properties around here. Shouldn't be a problem to find renters.
> > Boiling Springs is a good college town.
> > I can't guarantee if they'd be good tenants. That's a hard thing to judge
> > for anyone unfortunately.
> >
> > Get Outlook for iOS
> >
> > _____
> > _
> > From: Niki Wood <nwood@jpshub.com>
> > Sent: Saturday, October 22, 2022 5:56:03 PM
> > To: Michael Davis <michaeldavis@theunixplace.com>

> > Subject: Re: Other Property..
> > Yes, I liked also for waterfront properties. Nothing below 100K and
> without
> > HOA fees.
> > Broad River is very close. I live right off Cherryville Rd near the home.
> > There is a spot not even a mile away that I see cars pulled off on the
> side
> > of the road and people fishing there. Never more than 2 cars at time . No
> > clue if anyone ever catches anything. I assume one of the Creeks on 1656
> > runs into Broad River, if not it may be Moss Lake, which is also very
> close
> > to the property. There are several spots to fish in Broad River throughout
> > the county here.
> >
> > I hope this helps. But I will keep looking for waterfront properties. It
> > would be nice to get something off Broad River, lake properties in this
> area
> > are super high, but sometimes someone will sell a very small piece.
> >
> >
> > Get Outlook for iOS
> >
> >_____
> _
> > From: Michael Davis <michaeldavis@theunixplace.com>
> > Sent: Saturday, October 22, 2022 1:50:36 PM
> > To: Niki Wood <nwood@jpshub.com>
> > Subject: Other Property..
> > I took a quick look, and it doesn't look like there's a lot of water
> > around there.  I like the notion of getting Cape Fear River property
> > cheap (it should be cheap, since it is apparently polluted)..but the wife
> > does not like the notion of boats making her queasy.  I will have to fix
> > the pond and fish in there for now.
> > And so, what about other properties?  I should have maybe another $40K or
> > so.  I am thinking either good woodland within 20 minutes of there, or a
> > property that can be fixed up and rented.  Are there any good rental zones
> > in the area?  College areas are good, though they may tear the place up.
> > I need some advice in that regard.  Please advise.
> >
> >
> >
> >
> >
> >

**Fwd: Other Docs**

**Niki Wood <nwood@jpshub.com>**
Thu 10/27/2022 9:51 AM
To: Melissa Bradshaw <mbradshaw@jpshub.com>

Michael Davis signed

Get Outlook for iOS

---

**From:** Michael Davis <michaeldavis@theunixplace.com>
**Sent:** Friday, October 21, 2022 3:12:41 PM
**To:** Niki Wood <nwood@jpshub.com>
**Subject:** Other Docs

I have attached the other docs. I believe this is it?
Can you send me a copy of the signed contract? It can be photos from your phone if you have no scanner.
The money is apparently on its way, it was supposed to be ready on Wednesday, but they found an excuse to latch on to it until probably Monday.


On Fri, 21 Oct 2022, Niki Wood wrote:

> I am so excited that you are excited about it!!
> Good things can happen!
>
> Get Outlook for iOS
>
> _____
> From: Michael Davis <michaeldavis@theunixplace.com>
> Sent: Friday, October 21, 2022 8:57:50 AM
> To: Niki Wood <nwood@jpshub.com>
> Subject: Re: Pictures
> This is all excellent.
> I told you from the first that I had a feeling about this place.
> I have seen strange times, and have been trained to generally expect the
> worst, so I am amazed. I feel like I am finally going to have a good
> time, it's about time!
>
>
> On Fri, 21 Oct 2022, Niki Wood wrote:
>
> > Ok! I just didn't want you to be surprised about anything.
> >
> > No easements on what will be your side of the property. Seller also has 10
> > acres beside it that does have an easement for Duke Energy. I do know

> that.
> > I do not know where the water meter is located but will find out.
> > She noted water moisture under the house which I did ask about. She said
> > noticed moisture after we had a big rain. She just wanted to be sure she
> > disclosed in case there was an issue. She didn't want to Hide it.
> >
> > As far as being inside the house, I have not noticed or smelled any mildew
> > or mold. Musky maybe from being empty.
> >
> > Get Outlook for iOS
> >
> > _____
> _
> > From: Michael Davis <michaeldavis@theunixplace.com>
> > Sent: Friday, October 21, 2022 8:33:33 AM
> > To: Niki Wood <nwood@jpshub.com>
> > Subject: Re: Pictures
> > This all sounds fine.  She doesn't have to pay for my water, I can afford
> > to slide her a few bucks until the county stuff is taken care of.  Do you
> > know where the meter is at?  I only ask because it would be nice if it
> > were not on my property - nothing gives me the willies like the
> > government on my property!
> > But even if it is, I can tolerate them coming to work on it if I know I
> > only have to see them once.
> > Also, do you know if the power company has an easement on my property?
> > Also, can you ask for any information whatsoever regarding the moisture
> > under the house issue?  I am ready to get started..
> >
> >
> > On Fri, 21 Oct 2022, Niki Wood wrote:
> >
> > > Hi Mr Davis,
> > > The seller just told me about the water I wanted to make you aware. Of
> > > course, she will be paying for the water as agreed until she can get
> > meters
> > > separated. But there is minimum monthly $12 base charge for the county
> > > water.
> > > I know you are planning to try to use the spring or make a well. I'm not
> > > sure if you have that line turned completely off if it will stop that
> > $12
> > > monthly base charge or if that is possible. Must talk to county about
> > that.
> > >
> > > I just wanted to make you aware of that.
> > >
> > > Get Outlook for iOS
> > >
> > >>_____
> _

> > > _

> > > From: Niki Wood <nwood@jpshub.com>
> > > Sent: Friday, October 21, 2022 10:50:49 AM
> > > To: Michael Davis <michaeldavis@theunixplace.com>
> > > Subject: Re: Pictures
> > > Great!!
> > > If you have to date those addendums, can you be sure to put 10/19/22.
> They
> > > should match the date of the contract.
> > >
> > > Mr. Jayne's should have a copy of everything as well to help with his
> side
> > > of things.
> > >
> > > Look forward to hearing from you!
> > >
> > > Have a great day!
> > >
> > >
> > > Get Outlook for iOS
> > >
> >>_____
> _
> >
> > > From: Michael Davis <michaeldavis@theunixplace.com>
> > > Sent: Friday, October 21, 2022 6:50:18 AM
> > > To: Niki Wood <nwood@jpshub.com>
> > > Subject: Re: Pictures
> > > Excellent! I am working on the closing funds today.
> > > I will get the other papers to you in a moment.
> > > I have some questions about the house that I will also write about, as I
> > > want to see if I can get some minor work done on it before I arrive.
> > > Also, I may need your help with another tiny parcel acquisiton..
> > > I'll be in touch soon.
> > >
> > >
> > > On Thu, 20 Oct 2022, Niki Wood wrote:
> > >
> > > > Seller has signed accepted offer!
> > > >
> > > > Get Outlook for iOS
> > > >
> > >>>_____
> _
> > _
> > > _
> > > > From: Niki Wood <nwood@jpshub.com>
> > > > Sent: Wednesday, October 19, 2022 10:20:33 AM
> > > > To: Michael Davis <michaeldavis@theunixplace.com>

> > > > Subject: Re: Pictures
> > > > Great! Thank you so much for letting me know 😊
> > > >
> > > > Get Outlook for iOS
> > > >
> > >>>_____
> >
> > _
> > > _
> > > >
> > > > From: Michael Davis <michaeldavis@theunixplace.com>
> > > > Sent: Wednesday, October 19, 2022 6:12:54 AM
> > > > To: Niki Wood <nwood@jpshub.com>
> > > > Subject: Re: Pictures
> > > > I received the docusign e-mail..I am reading it now!
> > > >
> > > >
> > > > On Wed, 19 Oct 2022, Niki Wood wrote:
> > > >
> > > > Just sent the paperwork. Please confirm receipt.
> > > >
> > > > Thank you!
> > > >
> > > > Get Outlook for iOS
> > > > >
> > >>>>_____
> >
> > _
> > > _
> > > >
> > > > From: Michael Davis <michaeldavis@theunixplace.com>
> > > > Sent: Tuesday, October 18, 2022 3:38:00 PM
> > > > To: Niki Wood <nwood@jpshub.com>
> > > > Subject: Re: Pictures
> > > > The splitting sounds fine.
> > > >
> > > >
> > > > On Tue, 18 Oct 2022, Niki Wood wrote:
> > > >
> > > > > Would you be ok with splitting the $2000 -
> > > > > $1000 Earnest Money
> > > > > $1000 Due Diligence
> > > > >
> > > > > Due Diligence gets paid directly to seller.
> > > > > If not , not a deal breaker just a suggestion.
> > > > >
> > > > >
> > > > >
> > > > > Get Outlook for iOS
> > > > >

> >>>>>_____

> _

> > _

> > > _

> > > > _

> > > > > _

> > > > > > From: Michael Davis <michaeldavis@theunixplace.com>

> > > > > > Sent: Tuesday, October 18, 2022 12:59:40 PM

> > > > > > To: Niki Wood <nwood@jpshub.com>

> > > > > > Subject: Re: Pictures

> > > > > > I think $2000 will convince the seller the first time.  I am

> looking

> > > > > > forward to locking in and getting started with the repair plans.

> > > > > >

> > > > > >

> > > > > >

> > > > > > On Tue, 18 Oct 2022, Niki Wood wrote:

> > > > > >

> > > > > > > That's great!

> > > > > > > I think 1000 or 2000 is good. Just let me know which you prefer,

> > and

> > > > > I'll

> > > > > > > put it in.

> > > > > > >

> > > > > > > Get Outlook for iOS

> > > > > > >

> > >>>>>_____

> _

> > _

> > > _

> > > > _

> > > > > _

> > > > > > _

> > > > > > > From: Michael Davis <michaeldavis@theunixplace.com>

> > > > > > > Sent: Tuesday, October 18, 2022 12:41:41 PM

> > > > > > > To: Niki Wood <nwood@jpshub.com>

> > > > > > > Subject: Re: Pictures

> > > > > > > I can give earnest money, may as well put it in the contract to

> > > > > > > please the seller.  Is $1000 or $2000 sufficient?

> > > > > > > I don't need an inspection.  I have served as general contractor

> > on

> > > a

> > > > > new

> > > > > > > house, and I have built a house from scratch high on a mountain

> > with

> > > > > no

> > > > > > > crew (it almost killed me - won't do that again).  Fixing up

> this

> > > > house
> > > > > > > won't be a problem.  If it is affordable, it is likely that I
> will
> > > > want
> > > > > > > JPS to put a little bit of subflooring in before I arrive, and
> > maybe
> > > > > hook
> > > > > > > me up with a chimney repair expert..but I can definitely take it
> > > from
> > > > > > > there.  I know a bit about construction, enough to know that I
> am
> > > not
> > > > > > > qualified to repair a chimney!
> > > > > > >
> > > > > >
> > > > > > On Tue, 18 Oct 2022, Niki Wood wrote:
> > > > > >
> > > > > > > I do need to know if you plan on giving a Due Diligence Fee or
> > > > Earnest
> > > > > > > Money.
> > > > > > > It's optional and up to you if you choose to do so.
> > > > > > > I know you're wanting a quick close, are you planning to have
> it
> > > > > inspected
> > > > > > > or anything like that?
> > > > > > > Sounds like you are familiar with the fixer upper lifestyle.
> > > > > >
> > > > > >
> > > > > > Get Outlook for iOS
> > > > > >
> > >>>>>>_____
> > _
> > _
> > > _
> > > > _
> > > > > _
> > > > > > _
> > > > > > > _
> > > > > > > From: Niki Wood <nwood@jpshub.com>
> > > > > > > Sent: Tuesday, October 18, 2022 4:16:13 PM
> > > > > > > To: Michael Davis <michaeldavis@theunixplace.com>
> > > > > > > Subject: Re: Pictures
> > > > > > > Fantastic! I'm so glad it's going to work out.
> > > > > > > I will get that to you ASAP!
> > > > > > > I'll be home soon. So should have it within the next hour.
> > > > > > >
> > > > > > >
> > > > > > > Get Outlook for iOS
> > > > > >

```
> >>>>>>_____
> _
> > _
> > > _
> > > > _
> > > > > _
> > > > > > _
> > > > > > > _
> > > > > > > From: Michael Davis <michaeldavis@theunixplace.com>
> > > > > > > Sent: Tuesday, October 18, 2022 12:18:01 PM
> > > > > > > To: Niki Wood <nwood@jpshub.com>
> > > > > > > Subject: Re: Pictures
> > > > > > > I spoke with Mr. Jaynes.  I am convinced that we will have no
> > > > > > > disagreements whatsoever - excepting perhaps that he is
> > apparently
> > > a
> > > > > > Jeep
> > > > > > > man, while I prefer Land Cruisers.  Cruisers hold more kids.
> > > > > > > I want this property.  I just wrote him to request wire
> > > instructions
> > > > > so
> > > > > > > that the funds can start to funnel into his account.  If you
> > give
> > > > me
> > > > a
> > > > > > > contract, I am ready to sign it.
> > > > > > >
> > > > > > >
> > > > > > >
> > > > > > >
> > > > > >
> > > > >
> > > >
> > > >
> > >
> > >
> >
> >
>
>
```

# STATE OF NORTH CAROLINA

CLEVELAND County

FILED

2022 DEC 13 A 8:32

CLEVELAND CO., C.S.C.

BY _____

In The General Court Of Justice

Name And Address Of Plaintiff
DEBRA RAINES
PO BOX 392
SHELBY, NORTH CAROLINA 28151

**VERSUS**

Name And Address Of Defendant
MICHAEL DAVIS
1656 CHERRYVILLE ROAD
CHERRYVILLE, NORTH CAROLINA 28021

**SERVICEMEMBERS CIVIL RELIEF ACT DECLARATION**

G.S. Ch. 127B, Art. 4; 50 U.S.C. 3901 to 4043

**NOTE:** *Though this form may be used in a Chapter 45 Foreclosure action, it is not a substitute for the certification that may be required by G.S. 45-21.12A.*

## DECLARATION

I, the undersigned Declarant, under penalty of perjury declare the following to be true:

1. As of the current date: *(check one of the following)*
   - [ ] a. I have personal knowledge that the defendant named above is in military service.*
   - [ ] b. I have personal knowledge that the defendant named above is **not** in military service.*
   - [x] c. I am unable to determine whether the defendant named above is in military service.*

2. As of the current date, I [ ] have [x] have not received a copy of a military order from the defendant named above relating to State active duty as a member of the North Carolina National Guard or service similar to State active duty as a member of the National Guard of another state. *See G.S. 127B-27 and G.S. 127B-28(b).*

3. I [ ] used [x] did not use the Servicemembers Civil Relief Act Website (https://scra.dmdc.osd.mil/) to determine the defendant's federal military service.
   - [ ] The results from my use of that website are attached.
   **(NOTE:** *The Servicemembers Civil Relief Act Website is a website maintained by the Department of Defense (DoD). If DoD security certificates are not installed on your computer, you may experience security alerts from your internet browser when you attempt to access the website. Members of the North Carolina National Guard under an order of the Governor of this State and members of the National Guard of another state under an order of the governor of that state will **not** appear in the SCRA Website database.)*

4. The following facts support my statement as to the defendant's military service: *(State how you know the defendant is or is not in the military. Be specific.)*

*****NOTE:** *The term "military service" includes the following: active duty service as a member of the United States Army, Navy, Air Force, Marine Corps, or Coast Guard; service as a member of the National Guard under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days for purposes of responding to a national emergency; active service as a commissioned officer of the Public Health Service or of the National Oceanic and Atmospheric Administration; any period of service during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause. 50 U.S.C. 3911(2). The term "military service" also includes the following: State active duty as a member of the North Carolina National Guard under an order of the Governor pursuant to Chapter 127A of the General Statutes, for a period of more than 30 consecutive days; service as a member of the National Guard of another state who resides in North Carolina and is under an order of the governor of that state that is similar to State active duty, for a period of more than 30 consecutive days. G.S. 127B-27(3) and G.S. 127B-27(4).*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Date 12/8/2022

Signature Of Declarant

Name Of Declarant (type or print)
DEBRA RAINES

**NOTE TO COURT:** *Do not proceed to enter judgment in a non-criminal case in which the defendant has not made an appearance until a Servicemembers Civil Relief Act affidavit or declaration (whether on this form or not) has been filed, and if it appears that the defendant is in military service, do not proceed to enter judgment until such time that you have appointed an attorney to represent him or her.*

(Over)

AOC-G-250, Rev. 5/21
© 2021 Administrative Office of the Courts